The State of Ohio, Appellant and Cross-Appellee, *v.* Ferguson, Appellee and Cross-Appellant.

[Cite as State *v.* Ferguson (1983), 5 Ohio St. 3d 160.]

(No. 82-441—Decided June 22, 1983.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. De Louis Brough-ton,* for appellant and cross-appellee.

*Mr. Stephen G. Thomas,* for appellee and cross-appellant.

CELEBREZZE, C.J.

I

At issue in the first instance is whether the prosecutor's comment in closing argument that the state's evidence is "uncontradicted" is a comment on the accused's failure to take the stand and consequently a violation of the accused's right against self-incrimination.

During closing argument, the prosecutor made several remarks which appellee characterizes as impermissible references to his failure to testify. Specifically, the record reveals the remarks were as follows:

"Force, ladies and gentlemen. This was not a consensual affair. I believe the evidence is quite clear on that. We have nothing to contradict. There is no evidence that's come forth in this trial that I know of, to contradict."

"Mr. DeVan: Objection.

"The Court: Overruled.

"* * *

"* * * We're concerned with the 12th, into the 13th, and there were only two people in that apartment, and there is no evidence to contradict that.

"Mr. DeVan: Objection.

"The Court: Overruled."

In *Griffin* v. *California* (1965), 380 U.S. 609 [32 O.O.2d 437], the Supreme Court ruled as prejudicial direct comments upon the accused's failure to take the stand. In so holding, the court recognized that to allow such comments would penalize an accused for exercising his constitutional right against self-incrimination. Mindful of that principle, this court stated in *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, at 404 [2 O.O.3d 495]:

"We find no fault with the state's closing argument. The comments by the prosecutor did not focus attention on the silence of the appellant, but rather reminded the jury that the state's case had not been rebutted. Moreover, the trial court instructed the jury that appellant's failure to testify should not be considered for any purpose. * * *" Accord *State* v. *Lockett* (1976), 49 Ohio St. 2d 48, at 65 [3 O.O.3d 27], reversed on other grounds (1978), 438 U.S. 586; *State* v. *Wade* (1978), 53 Ohio St. 2d 182, at 186 [7 O.O.3d 362]; and *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, at 158 [17 O.O.3d 92].

Further, this court in *State* v. *Lane* (1976), 49 Ohio St. 2d 77, stated, at 86 [3 O.O.3d 45]:

"* * * Thus, the prosecution is not prevented from commenting upon the failure, on the part of the defense, to offer any other evidence in support of its case. * * *"

Finally, in *State* v. *Cooper* (1977), 52 Ohio St. 2d 163 [6 O.O.3d 377], this court held:

"A helpful test in determining whether the above comment improperly indicated that the defendant failed to testify on his own behalf at trial is to determine '* * * whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a

comment on the failure of the accused to testify.' *Knowles* v. *United States* (C.A. 10, 1955), 224 F. 2d 168, 170." *Id.* at 173.

The thrust of appellee's contention is that he was the only potential witness in a position to contradict the victim's testimony. As a result, appellee argues that references to uncontradicted evidence necessarily focus attention on the failure of the accused to take the stand. We disagree.

As the cases indicate, a prosecutor is allowed to comment upon the relative strength of the state's case, which includes commenting upon the fact that the state's case has not been rebutted. That is precisely the nature of the prosecutor's comments in the case at bar. Here, the questioned remarks concern evidence that was uncontradicted not only by virtue of the fact that appellee did not testify, but also by any evidence whatsoever. In this context, the prosecutor's comments were permissible matters for closing argument.

Moreover, the jury *was* instructed not to consider the appellee's failure to testify for any purpose. While this instruction may not purge the error occasioned by a direct comment on an accused's failure to testify, it must generally be presumed that the jury followed the instructions of the trial judge. Thus, a reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is instructed not to consider the accused's failure to testify for any purpose.

Accordingly, we reverse the portion of the judgment of the court of appeals below which granted appellee a new trial on the basis of the prosecutor's comment on the accused's silence.

## II

Appellee's proposition of law number four states: "The Rape Victim Shield Law violates due process when its application prevents cross-examination concerning an alleged rape victim's sexual activity where her hospital records document her involvement in sexual intercourse two days before the alleged rape, but where upon voir dire she had denied [*sic*] any sexual activity for ten days before the alleged rape."

Appellee maintains that the trial court should have allowed examination of the victim concerning her prior sexual activity with persons other than the appellee. Appellee allegedly could produce evidence that the victim had sexual intercourse approximately two days prior to her confrontation with appellee, whereas the victim had previously testified on a preliminary matter that she had had sexual intercourse no earlier than ten days prior to having sexual intercourse with appellee. Appellee's position is that the failure of the trial court to allow such cross-examination under the authority of R.C. 2907.02 compromises appellee's constitutional right to confront his accusers.

R.C. 2907.02(D) states in part:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the vic-

tim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

Evidence of the victim's prior sexual activity with a person other than the defendant is inadmissible unless it relates to the "origin of semen, pregnancy, or disease * * *." In the case at bar, appellee is seeking to introduce evidence of the victim's prior sexual activity with one other than appellee in an attempt to impeach her credibility. R.C. 2907.02 clearly prohibits such an impeachment technique by rendering inadmissible the evidence of the victim's prior sexual activity when offered for its relevance to the victim's credibility.

In *State* v. *Gardner* (1979), 59 Ohio St. 2d 14 [13 O.O.3d 8], we held that an accused's constitutional right to confront the witnesses against him was not absolute and, under the proper circumstances, would give way to appropriate legitimate state interests.[1] We recognized the legitimate state interests advanced by R.C. 2907.02(D) in *Gardner, supra,* at 17-18, to be as follows:

"* * * First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process."

These then are the state's interests which must be balanced against appellee's right to confront his accusers. Without discounting the importance of effective and thorough cross-examination, we believe the balance should be resolved against admission of the evidence proposed by appellee. Appellee concedes that his proposed cross-examination relates only to the veracity of the victim's testimony concerning when she had sexual intercourse prior to her alleged attack by appellee. Appellee's theory is that if the victim's testimony was inconsistent regarding prior sexual activity with a person other than appellee, her testimony that appellee forced her to submit to sexual intercourse, fellatio, and cunnilingus is suspect.

---

[1] Cf. *Davis* v. *Alaska* (1974), 415 U.S. 308, where the United States Supreme Court resolved the balance between a state witness shield statute and an accused's right of confrontation in favor of the accused. Contrary to the facts of the case *sub judice,* the shield statute in *Davis* prevented the accused from presenting evidence that went beyond an attempt to discredit the testimony of a state's witness, but compromised the ability of the accused to defend against criminal charges. In *Davis,* a statute declared inadmissible the fact that a state's witness was on probation. However, the accused's defense was that the witness had erroneously identified the accused as the perpetrator in order to gain favorable probation status. This question is not presented by the facts of the case at bar.

We are unpersuaded that appellee's confrontation rights mandate that he be allowed to delve into matters so tenuously connected with the truth of the victim's testimony especially in light of the aforestated state interests to exclude that line of cross-examination. Further, the key fact at issue at trial was whether the victim consented to sexual activity with appellee, not whether she had sexual intercourse two or ten days earlier. Hence, we hold that R.C. 2907.02(D) will render inadmissible evidence of the rape victim's sexual activity with one other than the accused where the evidence: does not involve the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender; is offered simply to impeach the credibility of the victim; and is not material to a fact at issue in the case.

Accordingly, the judgment of the court of appeals is affirmed with respect to this issue.

## III

The next issue for our consideration is whether the trial court erred in refusing to allow cross-examination of the victim concerning the fact that she had consulted a law firm regarding bringing a civil action against appellee's former employer. At trial, the prosecutor objected to cross-examining the victim concerning her knowledge of a certain law firm. Appellee's trial counsel then proffered, in effect, that the victim was contemplating a civil action against appellee's former employer as a result of the incident between the victim and appellee.[2]

Evid. R. 611(B) states:

"Cross-examination shall be permitted on all relevant matters and matters affecting credibility."

It is beyond question that a witness' bias and prejudice by virtue of pecuniary interest in the outcome of the proceeding is a matter affecting credibility under Evid. R. 611(B).[3] Appellee contends that the victim's con-

---

[2] Specifically, defense counsel stated:

"I was pursuing the matter of a civil lawsuit which apparently is in the works by her family, or her, or both. That would be against Emco Properties, which would be the former employer of Mr. Ferguson, my client. Emco Properties owns the property, and the management company that ran the business and the apartment towers that he worked at.

"Now, I understand that this lady or her family has contacted the law firm of Dworken and Bernstein, to institute civil proceedings. She, of course, would be the plaintiff in such a matter, and they, of course, would have, as relatives, certain interests in the outcome of the lawsuit. But, I feel that she has a motive to lie and falsify, and we should be allowed to pursue it, because it goes directly to her credibility. If she is to gain as a result of any civil lawsuit, in the nature of monetary gain, I think that directly reflects upon her motive to say what she is saying today.

"Be that as it may, I request permission of the court to go into this matter. It will be a brief examination, and shouldn't last more than a few minutes, and then quickly go on to something else.

"The Court: All right. The prosecution has timely objected. The court sustains the objection."

[3] *E.g.,* 3A Wigmore on Evidence (Chadbourn Rev. 1970) 788, Section 949; and Lilly, An Introduction to the Law of Evidence (1978) 297-298, Section 82.

templated civil action against appellee's former employer, stemming from the victim's alleged rape, was a permissible subject of cross-examination since the victim stood to benefit financially from appellee's conviction. We agree that appellee should have been permitted to elicit testimony regarding the civil action contemplated by the prosecuting witness. In *State* v. *Doughty* (Me. 1979), 399 A. 2d 1319, at 1323, the following language appears:

"The general rule is that the pendency of a civil action brought against an accused by a witness in a criminal case is admissible as tending to show interest and bias of the witness to prove a motive to falsify, exaggerate or minimize on his part, in other words, to support a claim that such witness' testimony may be false or inaccurate, intentional or otherwise. Such evidence may be introduced in cross-examination. * * *

"The rule has been extended to the situation where no civil action has been commenced, but such a suit is or may be contemplated, as in the case of consultation with, or hiring of, an attorney." See, also, *People* v. *Richmond* (1971), 35 Mich. App. 115, 192 N.W. 2d 372, and cases compiled in Annotation, 98 A.L.R. 3d (1980) 1060, Sections 3(b) and 5(b).

In the instant cause, the trial court prevented the jury from considering whether the financial motivation for the victim's testimony rendered her testimony not credible. It is true that generally the scope of cross-examination is within the sound discretion of the trial judge.[4] However, inasmuch as the victim's testimony was vital to the state's case and to appellee's defense, we believe the trial court abused its discretion in refusing to allow evidence of the contemplated civil suit.[5]

---

[4] *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218 [24 O.O.3d 322].

[5] The minority reasons that because the prosecuting witness' statement to police shortly after the incident, her preliminary hearing testimony, and her trial testimony are consistent, the jury would have overlooked the fact that at the time of trial she was contemplating bringing a civil action against appellee and would have benefited financially from appellee's conviction. Thus, the minority would hold that the error committed by the trial court in refusing to allow cross-examination regarding the prosecuting witness' contemplated civil suit against the accused amounted to nothing more than harmless error. The minority's contention that the consistency of the prosecuting witness' account somehow obviates the accused's right to fully cross-examine that witness on matters affecting her credibility is a tortured application of the harmless error doctrine.

It is axiomatic that before an error of constitutional dimension may be called harmless error, the record must establish that the error was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U.S. 18. In addition, an error may be harmless if the state's case against the accused is overwhelming. *Harrington* v. *California* (1969), 395 U.S. 250. Instead of adhering to the above standards, the minority is forced to resort to speculating that the jury would have found the prosecuting witness' testimony credible despite her pecuniary interest. Unlike the minority, we are unwilling to hide behind the doctrine of harmless error when the determination that error has been committed is inescapable. That is not to say that harmless error does not have its place in our criminal justice system. However, the cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction. Neither of those situations is present here inasmuch as the appellee owes his convictions entirely to the testimony of the prosecuting witness.

Consequently, we hold that accused is permitted to cross-examine the prosecuting witness as to the witness' pending or contemplated civil action against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution.

Accordingly, the judgment of the court of appeals ordering that appellee receive a new trial is affirmed.

## IV

The final issue to be addressed is whether the state produced sufficient evidence of sexual conduct to sustain a conviction for rape under R.C. 2907.02.

One of the elements of the offense of rape under R.C. 2907.02 is that the accused engage in sexual conduct with the victim. R.C. 2907.01(A) defines "sexual conduct" as:

"* * * vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons, regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

Thus, in order to sustain a conviction on rape charges predicated on either vaginal or anal intercourse, the state is required to establish beyond a reasonable doubt that the accused and the victim actually engaged in vaginal or anal intercourse. Under R.C. 2907.01(A), the state may establish vaginal or anal intercourse by proving the slightest degree of penetration.

In the instant case, the *only* evidence which arguably tends to establish vaginal or anal intercourse is the testimony of the victim. Her testimony in that regard is limited to the statement, "And then we had intercourse a couple times."

We hold that the state's evidence on the element of sexual conduct was insufficient to establish that appellee had either vaginal or anal intercourse with the victim. The victim's testimony was that she and appellee only had "intercourse." The victim did not testify that she and appellee had sexual intercourse, nor did the victim testify as to *any* degree of penetration. Inasmuch as one of the accepted definitions of the term "intercourse" relates to sexual intercourse, we could infer from the victim's testimony that she and

---

It can fairly be said that if the jury determined that the prosecuting witness was not credible, the state's case against the appellee would evaporate. It is therefore ludicrous to conclude as a matter of law that the error could not have contributed to appellee's convictions.

We are reminded of the words of Chief Justice Burger in *United States* v. *Nixon* (1974), 418 U.S. 683, 709:

"We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence."

appellee engaged in sexual intercourse. Two considerations prevent us from drawing that inference. First, in recognition of the state's burden of proof in criminal cases, we will not draw inferences against the accused from what must be characterized as vague and ambiguous testimony.[6] Second, the record is completely devoid of any other evidence from any source that appellee and the victim engaged in "sexual intercourse" on the evening in question.

Consequently, in a rape prosecution where the state's evidence is essentially the testimony of the victim, and where the victim testifies that she and the accused only had "intercourse" and does not testify as to any degree of vaginal or anal penetration, convictions on charges relating to either vaginal or anal intercourse are based on insufficient evidence. That being the case, judgments of acquittal must be entered as to the two charges of rape which were based on vaginal or anal intercourse.[7]

Accordingly, the judgment of the court of appeals is reversed insofar as it held that appellee's convictions were sustained by sufficient evidence of sexual conduct.

## V

Concluding, we reverse the court of appeals in part and order that judgments of acquittal be entered on the two counts of rape involving vaginal or anal intercourse in the indictment. As to the remaining four counts, we affirm the court of appeals in part and order that appellee receive a new trial on the ground that the trial judge erred in limiting the cross-examination of the prosecuting witness by disallowing testimony regarding the witness' contemplated civil action against appellee's former employer which arose from appellee's allegedly criminal conduct.

*Judgment accordingly.*

---

[6] The minority adopts the position of the court of appeals below that penetration, hence sexual intercourse, was implicit from the context of the victim's testimony. In the case at bar, the minority presumes that had the prosecutor asked the victim whether appellee penetrated her or whether she was referring to sexual intercourse the record would have disclosed affirmative responses. The consequences of this approach are disturbing to say the least. By utilizing such presumptions the minority seeks to make the record which the prosecutor failed to make. Perhaps the minority should be reminded that it is the state's burden to prove an accused's guilt beyond a reasonable doubt, not ours.

We can only imagine the anxiety which must take place when the victim of a sexual attack recounts the details of her experience in open court. In recognition thereof, the General Assembly enacted R.C. 2907.02(D) discussed earlier in this opinion. By the same token, as unpleasant an ordeal as it might be, we must reinforce the need to have the events described with sufficient clarity to establish the offender's guilt beyond a reasonable doubt. To this end, the prosecutor must be aware of the elements necessary to prove the state's case and to elicit testimony as to those elements as tactfully as possible.

[7] Two of the six charges of rape brought against appellee were based on either vaginal or anal intercourse. The remaining charges were based on either fellatio or cunnilingus. As a consequence, when appellee argues that the state failed to prove penetration, he attacks only two of his six convictions.

W. Brown, Sweeney and C. Brown, JJ., concur.

Locher, Holmes and J. P. Celebrezze, JJ., concur in part and dissent in part.

Locher, J., concurring in part and dissenting in part. Although I am in accord with the majority's treatment of the instant action as reflected in the first and third paragraphs of the syllabus of its opinion, I must respectfully dissent from the balance thereof.

I share Justice Holmes' incredulity with the majority's ruling that the subject rape convictions must fail for insufficiency of evidence. To hold, given the clear import of the victim's testimony, that her failure to utter the magic words "penetration" or "sexual intercourse" dooms the state's case is to capitulate completely to semantic formalities. Although, as will be explicated presently, facts do exist upon which the conclusion may be reached that no rape occurred, the majority chooses not to rely on those in overturning appellee's convictions.

I would also be remiss were I not to address a few remarks to the majority's application of R.C. 2907.02(D), the Rape Victim Shield Law. Clearly, no single statute has done more both to encourage the reporting of incidents of sexual assault and to focus attention during rape prosecutions on the behavior of the alleged perpetrators, rather than on the "mores" of the unfortunate victims. Indeed, until the enactment of R.C. 2907.02(D), law enforcement officials were severely hampered in their efforts to prevent and punish the commission of this most deplorable crime.

Despite its primary concern with facilitating the prosecution of sexual assaults and insulating the rape victim from harassment at trial, the General Assembly recognized that some accommodation had to be made to ensure that defendant's constitutional right to confront his accusers was protected. Towards this end the authors of R.C. 2907.02 carved out certain exceptions to the otherwise absolute ban on the admissibility of evidence of the victim's sexual history. Moreover, this court has held that, in applying the subject statute, the state interest in protecting the witness had to be balanced "against the probative value of the excluded evidence." *State* v. *Gardner* (1979), 59 Ohio St. 2d 14, 17 [13 O.O.3d 8].

In the case at bar, appellee sought to have admitted into evidence a medical report, made soon after the alleged rape, which contradicts the victim's testimony rendered in a *voir dire* proceeding that she had not had sexual intercourse for ten days before the incident. The report evidenced the presence inside the victim of sperm approximately two days old, thus, contradicting her earlier testimony. Clearly, the majority errs in lending its support to the trial court's application of R.C. 2907.02(D) to preclude admission of the report.

The evidence appellee wishes to present meets the criteria for admissibility set forth in the statute. First, it involves the origin of semen. The fact

that the sperm, because of its age, could not have been appellee's is quite significant. Its presence and the notable absence of fresh semen inside the victim tends to show, if anything, either that appellee had not had the alleged criminal sexual relations with the victim or that he had not ejaculated inside her. A trier of fact could reasonably infer from the latter possibility that no penetration and, thus, no rape had been committed.

Secondly, the medical report is material to several facts at issue—not only the primary consideration of whether any illicit sexual conduct occurred but also that of whether the victim's testimony is to be believed. In a trial whose resolution is almost completely dependent upon the jury's appraisal of the victim's credibility, the failure to permit the admission of the medical report into evidence is a clear violation of appellee's right to confront those appearing against him and to present his defense. In this instance, the rights of the alleged victim must give way to the superior constitutional entitlements of the accused.

Finally, the probative value of the medical report outweighs any potential prejudicial impact its admission might cause. Appellee does not seek to place the report into evidence in order to depict the victim as promiscuous; he merely wishes to challenge the trustworthiness of the victim's testimony. Indeed, it cannot be seriously argued that any reasonable fact-finder, presented with evidence showing, amongst other things, that the victim has engaged in sexual intercourse on at least one prior occasion, would deem her so unchaste as to have necessarily consented to the alleged assault. The admission of the medical report clearly does not represent the unbridled exploration of a victim's sexual history that R.C. 2907.02 was designed to prevent. None of the policy objectives of the Rape Victim Shield Law would be compromised by granting the admission which appellee requests.

For the foregoing reasons, I dissent from the majority's holdings, as they are presently expressed in the second paragraph of the syllabus of its opinion and in the discussion relative to the fourth issue.

HOLMES, J., concurring in part and dissenting in part. Although I agree with the conclusions of the majority as to issues number one and two, I must dissent as to issues number three and four.

Although I understand it to be the general principle of the law that an accused may be permitted to cross-examine the prosecuting witness as to the witness' pending or contemplated civil action against the accused in order to demonstrate possible bias, I am not disposed to state that such cross-examination is mandated in every instance where sought by the accused, nor am I disposed to conclude that it is prejudicial error in every case where the trial court has denied such cross-examination.

Reviewing the totality of the evidence here, I conclude that even in light of Evid. R. 611(B), and the case law which would permit cross-examination regarding contemplated civil action to show bias, the denial of such cross-examination here could not have constituted prejudicial error. The testimony

of the prosecuting witness at the trial was in essence substantially the same statement given to the prosecutor's office in the criminal affidavit filed with the clerk of courts on March 13, 1980, the immediate morning following the crime.

The testimony given by the prosecuting witness at the preliminary hearing dated April 1, 1980 also tracks the testimony of the witness given at the trial. In like manner, the statement of Ronald Buzzatto, the victim's boyfriend, given to the Bedford Heights police on April 29, 1980, quite vividly reiterates the dastardly happenings that took place in the victim's apartment, such having been related to Buzzatto by the victim in a phone call made to Buzzatto the same morning shortly following the incident.

If it was the sincere desire of defense counsel to show that the testimony of the witness was only for the purpose of influencing the outcome of an anticipated civil proceeding, he could have accomplished this by comparing the statements which were given at or near the time of the alleged offenses, and the testimony at trial. From such a review it could reasonably have been determined whether any groundwork was available for establishing bias on the part of the accusing witness. In that the defense had all of the above material, plus the victim's original statement given to the police on the morning of March 13, 1980, available to him for purposes of assuring that the victim's trial testimony matched that given by her the day of the crime, possible bias takes a lesser role as an issue and should be considered within the setting of this case.

In view of the fact that no foundation was laid, no in camera inspection of any statements was asked for, and what would appear that defense counsel only wanted to question the victim for a few minutes about the civil case and then move on, makes it clear that any claim of bias was only a strategy ploy as fuel for closing argument or an appeal.

No rule should be used in a vacuum without considering all of the evidence; in this case the evidence was consistent and without contradiction. Therefore, *arguendo,* even if it was error to deny questions about the civil suit, I submit that the relevancy was slight and was harmless.

As to issue number four, I find the commentary in the majority opinion to be absolutely incredible. The majority states that "the state's evidence * * * was insufficient to establish that appellee had either vaginal or anal intercourse with the victim." This unbelievable conclusion was reached upon the basis that, "The victim's testimony was that she and appellee only had 'intercourse.' The victim did not testify that she and appellee had sexual intercourse, nor did the victim testify as to *any* degree of penetration."

The definitional section here, R.C. 2907.01(A), relating to "sexual conduct" provides that vaginal or anal intercourse may be complete, "however slight" the penetration might be. There is no attendant requirement in this section that caliper measurements be taken or other proof of degree of penetration be offered. It is only necessary, in light of all of the cir-

cumstances as shown by the totality of the evidence, that the act has been perpetrated upon the victim.

Here, the import of the majority decision is that the accusing witness was, at least as it related to vaginal and anal penetration, unaware when she was having sex. Insofar as the charges against the appellee involving fellatio and cunnilingus, there seems to be no question in the majority's mind that the complaining witness was significantly aware of what the appellee had accomplished in this regard since the witness had utilized the word "sex" in conjunction with the word "oral" relative to some of the appellee's nefarious activities.

As stated, I find the conclusion of the majority incredible in this regard because we are reviewing the testimony of a twenty-three year old woman with a high school education, a secretary in the Cleveland Clinic — not the testimony of an excitable, confused young lady of minority years. This lady's testimony that the appellee had forcibly engaged her in "intercourse" was knowledgeably not stated in the sense that these parties were having a casual conversation or discourse, but stated in the sense that they were engaging in a sexual activity, or sexual conduct involving some degree of penetration. As rightly stated by Judge Day of the court of appeals:

"It is very clear from the context of Zelko's testimony that the intercourse to which she referred was sexual intercourse and not, as defendant implies, mere communication. Penetration was implicit * * *."

One final reason may reasonably be advanced as to why the accused here should not be heard to argue that the witness in her testimony had not supplied one of the appropriate elements of the crime, that of penetration. The appellee himself points to factors which reasonably would allow the conclusion that the witness would know whether or not penetration had occurred.

The appellee points out, in relation to his arguments under issue number two, that certain hospital records show that the witness stated that she had sexual intercourse a number of days before this incident. The appellee, in his attempt to cross-examine the witness as to her prior sex activities, would do so to undermine her credibility or to show her propensity for such activity, and thus consent to the acts performed. Obviously, the appellee cannot have it both ways: arguing, on the one hand, in effect, that the complaining witness is a sexually knowledgeable female; yet, on the other hand, not knowledgeable enough to know that when she states she had intercourse that penetration was not involved in the maneuver. This I cannot accept. Therefore, upon this issue, I would affirm the court of appeals.

Based on the foregoing, I would reinstate the judgment of the trial court.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion.