**State**
**v.**
**Brewster**
*[Cite as 3 AOA 271]*

*Case No. 88AP-974*
*Franklin County, (10th)*
*Decided May 1, 1990*

*Mr. Michael Miller, Prosecuting Attorney, and Ms. Katherine B. Press, for Appellee.*

*Mr. David C. Winters, for Appellant.*

STRAUSBAUGH, J.

Defendant appeals from a judgment entered by the Franklin County Common Pleas Court upon verdicts of guilty returned by a jury on charges of rape, kidnapping, and gross sexual imposition. The charge of rape alleged the use of force upon a child less than thirteen years of age.

Defendant, Timothy L. Brewster, accompanied his daughter, Kimberly, on August 17, 1987, from Lima, Ohio, to Indian Lake and then to Columbus. The purpose of the Columbus visit was to allow Kimberly, who was living in Lima with defendant's estranged wife, Terri, to visit a friend, Amy Dickson, to help celebrate Amy's birthday. Defendant and Kimberly eventually located Amy at the home of Amy's friend, Tory Cline Stephens.

Defendant and Kimberly invited Amy to drive around town with them, which invitation Amy accepted. Ultimately, they drove to an area in Franklin County on McKinley Avenue which is the site of an Indian mound. After briefly exploring the mound, the parties drove to a gas station, where defendant bought beer for himself and wine coolers for the two girls. Upon returning to the Indian mound, Amy, Kimberly, and defendant drank, talked, and watched the other people who were present. Kimberly and Amy began rolling down the side of the mound to amuse themselves. Defendant then invited each girl, one at a time, to accompany him to the base of the mound to read a historical marker located there. Defendant took Amy to the marker first, at which time the rape was alleged to have occurred. After remaining atop the mound for one minute, Kimberly followed the two down the path to the base of the mound, but decided to return to the car when she saw defendant and Amy sitting at the base of the mound.

When Amy returned to the car, she informed defendant she would walk home. Defendant, however, grabbed Amy's arm and told her to get into the car. En route to Amy's house, defendant ran several red lights and Amy indicated her desire to return to her friend's home. When defendant stopped his automobile in order to confront another driver, Amy jumped out and ran to the home of Tory Stephens. Amy told several people, including Tory and Amy's father, Jay Dickson, that defendant had raped her. Jay Dickson reported the rape to the police and Amy was taken to Children's Hospital where she was examined by a physician. Amy's clothing was collected by the Columbus police for examination and a vaginal swab obtained from Amy at Children's Hospital was also submitted to the Columbus Police Department for examination.

As a result of this incident, defendant was indicated by a Franklin County Grand Jury on August 26, 1987 on one count of rape, one count of kidnapping, and one count of gross sexual imposition. The matter was tried to a jury in September 1988 at which time the state presented the testimony of Amy, Tory, Jay Dickson, several police officers, and the results of the forensic examination conducted upon the vaginal swab, Amy's underclothes, and defendant's underwear. The trial court excluded defendant's proffer of testimony regarding Amy's alleged sexual conduct with another person just prior to the August 17, 1987 incident and also denied defendant's proffer of the testimony of his estranged wife, Terri, regarding her sexual contact with defendant on the evening before the rape. At the conclusion of all the evidence, the jury returned guilty verdicts as to all counts. The court, finding appellant guilty of prior conviction specifications, sentenced defendant to concurrent terms of life imprisonment, thirteen to twenty-five years and three to ten years on each count respectively.

Defendant now appeals and sets forth the following three assignments of error:

"I. The refusal of the trial court to allow defense presentation of material evidence of the victim's sexual activity and defendant's sexual activity where each involved the origin of semen constitutes an abuse of discretion and results in the deprivation of defendant's rights under the Fifth, Sixth, and Fourteenth Amendments as guaranteed by the United States Constitution

and under the Ohio Constitution, Article I, Sections 10 and 16.

"II. The trial court's unreasonable limitation on cross-examination of the primary prosecution witness constitutes an abuse of discretion and a denial of confrontation and fair trial guarantees secured by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and by Article I, Section 10 and 16 of the Ohio Constitution.

"III. The trial court's sentencing of appellant in contravention of R.C. 2941.25 and the uncontested factual circumstances of appellant's case constitutes prejudicial and reversible error and is an abuse of discretion."

Defendant's first, and most vigorously asserted, assignment of error presents the court with the question of whether a trial court abuses its discretion when it denies a defense motion to proffer evidence regarding a victim's sexual activity and the defendant's sexual activity which are temporally proximate to the alleged rape. Specifically, defendant argues that although the rape shield law precludes the introduction of testimony designed to impeach a victim's credibility through either specific instances of prior sexual activity or through reputation evidence, testimony regarding sexual conduct of either the victim or the defendant is admissible to establish a possible alternative origin of semen. Since the proffered testimony in this case suggested an alternative source for semen found on the victim, on the defendant, and defendant's clothing, defendant contends that the proffered testimony should have been admitted.

R.C. 2907.02(D) provides:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section *unless it involves evidence of the origin of semen*, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section *unless it involves evidence of the origin of semen*, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." (Emphasis added.)

In *State v. Gardner* (1979), 59 Ohio St. 2d 14, the Ohio Supreme Court set forth the underlying reasons behind the enactment of Ohio's rape shield law:

"* * * First, by guarding the complainant's sexual privacy and protecting and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process." *Id.* at 17-18. (Footnote omitted.)

In the present case, defendant argues, and we agree, that the trial court erred in its application of R.C. 2907.02(D) so as to preclude cross-examination of the victim regarding a prior instance of sexual activity with a party other than defendant as this involve evidence of the origin of semen. We also agree with defendant's argument that the trial court erred in excluding testimony of defendant's estranged wife regarding the origin of semen found on the white shorts defendant was wearing.

As part of its case-in-chief, the state raised the issue of the presence and origin of semen. The origin of semen thereby became a fact in issue upon which defendant can introduce relevant evidence. See R.C. 2907.02(D). Pursuant to R.C. 2907.02(D), defendant sought to explain the origin of semen found during the examination of the victim as well as the semen discovered on defendant's shorts.

While we recognize that the issue of origin of semen necessarily impeaches the victim's credibility, exclusion of such evidence is not necessarily required. In *State v. Ferguson* (1983), 5 Ohio St. 3d 160, the alleged rape victim testified that she had not had sexual intercourse within ten days prior to the alleged rape. The Ohio Supreme Court held that defendant's rebuttal evidence was inadmissible and stated in paragraph two of the syllabus in *Ferguson, supra*:

"R.C. 2907.02(D) will render inadmissible evidence of the rape victim's sexual activity with one other than the excused where the evidence: does not involve the origin of semen, pregnancy,

or disease, or the victim's past sexual activity with the offender; is offered simply to impeach the credibility of the victim; and is not material to a fact at issue in the case."

However, in the present case, the contested evidence does not fall within the three prong test enunciated by the court in *Ferguson, supra.* Clearly, the evidence directly involves an explanation as to the origin of semen being from a source other than defendant. It is also clear that the evidence which defendant sought to introduce is material to the issue of explaining the origin of semen on both the victim and defendant's shorts. While the evidence offered by defendant does indeed impeach the credibility of the alleged victim, this is not the sole purpose of the offered evidence. As the Supreme Court has held, if such evidence is submitted for more than mere impeachment of a witness's credibility, then it is admissible. *State* v. *Williams* (1986), 21 Ohio St. 3d 33; R.C. 2907.02(D).

While the trial court precluded introduction of any evidence regarding the semen on the victim as well as defendant's shorts on the basis that defendant did not produce an expert witness to testify that semen could survive forty-eight hours, we find that the trial court erred to the extend that such evidence and testimony goes to the weight of the evidence, and not its admissibility, and therefore was proper for jury determination. See *State* v. *Porter* (1980), 48 N.C. App. 565, 269 S.E. 2d 266. Accordingly, defendant's first assignment of error is well-taken and is sustained.

Defendant next contends, under his second assignment of error, that the trial court improperly limited effective cross-examination of the alleged victim regarding alleged truancies from school. It is defendant's position that because the alleged victim's testimony was central to the prosecution's case, he should have been allowed greater latitude in cross-examination of the witness with regard to matters affecting her credibility. Defendant contends that when the trial court foreclosed inquiry into the alleged victim's school attendance, such action was violative of defendant's constitutional rights of confrontation and fair trial.

Defendant directs this court's attention to Evid. R. 611(B) which provides: "Scope of Cross-Examination. Cross-examination shall be permitted on all relevant matters and matters affecting credibility." However, Evid. R. 611 is not unlimited and is to be read in light of Evid. R. 608(B) which provides in pertinent part:

"Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness * * *."

In *State* v. *Williams* (1981), 1 Ohio App. 3d 156, this court held:

"Under the quoted portion of Evid. R. 608(B), particular instances of conduct, though not the subject of a criminal conviction, may be inquired into on cross-examination of a principal witness. Effective cross-examination demands that some allowance be made for going into matters of this kind. But, because the potential for abuse is high, through unfair prejudice, confusion of issues, and misleading of the jury, safeguards are erected in the form of requiring that the instances inquired into must be *clearly* probative of truthfulness or untruthfulness. The Rule reserves to the trial judge the same discretion, in ruling upon the permissibility of questions upon cross-examination which are irrelevant to the guilt or innocence of the accused, but are designed only to impeach or discredit a witness' testimony, as was permitted by Ohio case law prior to the adoption of the Rules of Evidence. * * *" *Id.* at 157. (Citation omitted.)

While we recognize that the right of an accused to cross-examine witnesses against him is to be granted considerable latitude, see *State* v. *Riffle* (1982), 3 Ohio App. 3d 202, we find that in the present case, the trial court did not abuse its discretion in limiting defense counsel's inquiry into the alleged victim's reasons for school absenteeism. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217. Indeed, the trial court could have determined that defense counsel's cross-examination did not involve conduct which was clearly probative of untruthfulness and which may have mislead the jury and confused the issues. *Williams, supra.* Accordingly, defendant's second assignment of error is not well-taken and is overruled.

Finally, in his third assignment of error, defendant argues that his conviction for rape and kidnapping are allied offenses of similar import and consequently, his conviction and sentencing for both offenses cannot be sustained.

R.C. 2941.25 provides that:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

It is clear that kidnapping and rape can be allied offenses of similar import which can result from the same conduct. *State v. Donald* (1979), 57 Ohio St. 2d 73. However, convictions for both of these offenses are appropriate when they are committed separately or with a separate animus. *State v. Logan* (1979), 60 Ohio St. 2d 126. As the state concedes, and we agree, defendant's kidnapping conviction must merge with his conviction for rape and on this basis defendant's third assignment of error is well-taken and is sustained. However, with regard to defendant's conviction for gross sexual imposition, we do not agree with defendant's contention that it must merge with his rape conviction. Although temporally connected, there exists sufficient separate conduct which does not mandate that the two offenses be merged. Accordingly, defendant's third assignment of error is sustained only to the extent that his convictions for rape and kidnapping must merge for purposes of sentencing.

Based on the foregoing, defendant's first and third assignments of error are well-taken and are sustained. Defendant's second assignment of error is not well-taken and is overruled. The judgment of the trial court is hereby reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

WHITESIDE and YOUNG, JJ., concur.