The STATE of Ohio, Appellee,

v.

EBEN, Appellant.

[Cite as *State v. Eben* (1992), 81 Ohio App.3d 341.]

Court of Appeals of Ohio,
Meigs County.

No. 465.

Decided June 12, 1992.

*Steven L. Story,* Meigs County Prosecuting Attorney, for appellee.

*Charles H. Knight,* for appellant.

---

STEPHENSON, Presiding Judge.

This is an appeal from a judgment of conviction and sentence entered upon a jury verdict by the Meigs County Court of Common Pleas, finding Gregory M. Eben, defendant below and appellant herein, guilty of gross sexual imposition in violation of R.C. 2907.05(A)(3), a felony of the third degree.[1] Appellant assigns the following errors for our review:

"I. The trial court erred by allowing a psychologist to be permitted to give his opinion as to the truthfulness of statements made by the alleged victim of sexual abuse, based on statements made by the alleged victim during psycho-therapeutic counseling sessions.

"II. The trial court erred in permitting the prosecutor to inquire, without foundation, as to whether or not a defense witness was homosexual, said inquiry being irrelevant and highly prejudicial to any past or future testimony by that witness."

---

1. At the time of the offense herein, R.C. 2907.05 read as follows:

"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons, to have sexual contact when any of the following apply:
" * * *

"(3) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person.

"(B) Whoever violates this section is guilty of gross sexual imposition. * * * Violation of division (A)(3) of this section is a felony of the third degree."

A review of the record reveals the following facts pertinent to this appeal. On December 14, 1990, Betty Jane "Janie" Woods dropped off her son, nine-year-old Jared Woods, at the home of his great uncle, Luther "Luke" White. Jared occasionally spent the night with his Uncle Luke and his uncle's housemate, appellant Gregory Eben. Shortly after arriving, Jared fell asleep on the sofa while watching television. Appellant carried Jared to his (appellant's) bedroom, and put him to bed. Jared customarily slept with appellant in his bed whenever he stayed with his Uncle Luke. White and appellant went to bed sometime later.

Jared awoke twice during the course of the night. On the first occasion, he was fully clothed in sweatpants, a T-shirt, underwear and socks. Appellant was asleep beside him, also clothed. Jared awoke a second time that evening. Jared testified that this time, both he and appellant were naked. Jared testified that appellant touched his penis and made him touch his (appellant's) penis. Jared told appellant to stop. Appellant told Jared not to tell anyone what had happened and to go back to sleep. The next day, appellant and White brought the boy back to his home.

Jared did not tell anyone of the incident until December 29, 1990, when his Uncle Luke called and asked him to come and spend the night. Because he did not want to go back to his Uncle Luke's, Jared told his mother what had happened during his last visit. She, in turn, contacted the authorities.

On February 12, 1991 an indictment was handed down by the Meigs County Grand Jury charging appellant with gross sexual imposition. After a trial on May 14 and May 15, 1991, the jury returned a verdict finding appellant guilty as charged. The court entered judgment on the verdict on May 20, 1991 and, on May 30, 1991, sentenced appellant to a two-year term of incarceration. Appellant was additionally required to pay a $5,000 fine, restitution, and costs. This appeal follows.

In his first assignment of error, appellant contends the court below erred in permitting Dr. James Althof, Jared's treating psychologist, to testify as to the truthfulness of statements made by the victim, Jared Woods. Appellant relies on *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, and *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894, for the proposition that an expert may not testify as to his opinion of the veracity of the statements of a child declarant. Althof's testimony is hearsay, appellant maintains, and is not admissible under the exception provided in Evid.R. 803(4), because Althof is not a medical doctor.

Initially we note that appellant failed to object to Dr. Althof's testimony at trial. Such failure constitutes a waiver of this argument on appeal. *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201, 489 N.E.2d

277, 279; *State v. Lancaster* (1971), 25 Ohio St.2d 83, 54 O.O.2d 222, 267 N.E.2d 291, paragraph one of the syllabus. Assuming, *arguendo*, that appellant had preserved this alleged error by asserting a timely objection in the court below, we would still find no merit in his first assignment of error.

■ The Ohio Supreme Court addressed the issue of expert testimony in child sexual abuse cases in *State v. Boston, supra*. Therein, the court held expert testimony as to the veracity of the statements of a child declarant to be inadmissible. The court further held that expert testimony by a specialist in child sexual abuse that it was her opinion that the child was a victim of sexual abuse is properly admissible pursuant to Evid.R. 702 and 704.[2] The court found that such testimony would aid jurors in making their decision whether a child had been sexually abused.

After a review of the trial transcript, it is apparent that appellant misconstrues or misstates the testimony in the case at bar. Appellant contends that Dr. Althof was permitted to give his opinion as to the truthfulness of statements made by Jared Woods. Appellant refers this court to a page in the transcript where said testimony was allegedly adduced. There, Dr. Althof testified as follows:

"Q. Okay. Doctor, as a result of your interviews with Jared, and the testing you performed, do you have an opinion with respect to whether or not he has been the victim of sexual abuse?

"A. I do.

"Q. What is that opinion, Doctor?

"A. I think he was sexually abused.

"MR. STORY: Okay. Thank you, Doctor."

This is precisely the sort of expert testimony sanctioned by the Supreme Court in *Boston, supra*. Accordingly, we find no merit to appellant's argument. See, generally, *State v. France* (Mar. 4, 1992), Summit App. No. 15198, unreported, 1992 WL 41285; *State v. Mona* (June 19, 1991), Summit App. No. 14818, unreported, 1991 WL 116306; *State v. Adams* (Apr. 16, 1991), Washington App. No. 90CA5, unreported, 1991 WL 62184.

---

**2.** Evid.R. 702 and 704 read, respectively, as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

■ In support of this same assignment of error, appellant contends the trial court erred in admitting Althof's testimony because its probative value was substantially outweighed by its prejudicial effect and its ability to confuse and mislead the jury. See Evid.R. 403(A). More specifically, appellant contends that Althof's testimony is inadmissible because he used a galvanic skin machine on Jared. Appellant reasons as follows. A galvanic skin machine is used as a portion of a polygraph test, and results of polygraph tests are inadmissible, according to *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, absent stipulation by the parties. Because Althof based his opinion of the veracity of Jared's statements on this test, the results of which would have been inadmissible, his testimony should have been excluded.

There is nothing in the transcript to support appellant's contention. First, as noted above, Althof did not give an opinion on Jared's veracity. Second, it is apparent from the transcript that Althof's opinion that Jared had been sexually abused was not based upon any use of the galvanic skin machine. Rather, Althof used the machine only to help Jared to learn to relax, not as a means of evaluation. Based upon the foregoing, appellant's first assignment of error is overruled.

■ In his second assignment of error, appellant contends the trial court erred on three separate grounds in permitting the prosecutor to inquire of Luke White whether he was homosexual. Said inquiry was improper, appellant maintains, because: (1) no foundation was laid, (2) the sexual preference of the witness was irrelevant, and (3) "such an inquiry so prejudices past or future statements made by this defense witness, that it renders his testimony of no use, and in fact casts it in a prejudicial light."

At trial Luther White testified on appellant's behalf, stating a friend of his, Terrie Radcliffe, was currently staying with him, as well as appellant. He further stated that both he and appellant owned the house. White testified that he observed Jared get up once during the night and go to the bathroom, at which time Jared was fully clothed. He further testified that Jared's relationship with appellant was "absolutely normal" on the two occasions during which the extended family got together over the Christmas holidays. White stated that on one occasion, appellant and Jared made a candle together and, on another, Jared played his new stereo for appellant.

The state questioned White on cross-examination as to whether he was a homosexual, whether he had been intimate with appellant, and whether he loved appellant. White testified that he was homosexual, that he had been intimate with appellant, and that he did love appellant. He further testified that they had purchased their house together. We find such cross-examina-

tion to have been a permissible method of demonstrating the witness's favorable bias toward appellant, and therefore proper.

Impeachment by showing bias is clearly recognized in Ohio. R.C. 2945.42 provides: "No person is disqualified as a witness in a criminal prosecution by reason of his interest in the prosecution as a party or otherwise * * *. Such interest * * * may be shown for the purpose of affecting the credibility of such witness." Case law also recognizes this type of impeachment. See *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265; *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008; *Keveney v. State* (1923), 109 Ohio St. 64, 141 N.E. 845. See, also, Evid.R. 616 and Staff Notes thereto.[3]

In the case *sub judice*, evidence of a relationship between the witness, White, and the appellant is evidence of bias. As appellee notes in its brief, had the witness been a woman who was intimately involved with appellant, the state would clearly have been permitted to impeach her credibility by questioning her about her relationship with appellant in order to demonstrate her bias toward him. That the witness and appellant were male and engaged in a homosexual relationship is a distinction without a difference.

Furthermore, the state was not required to lay a foundation prior to eliciting this information on cross-examination. In *State v. Kehn* (1977), 50 Ohio St.2d 11, 19, 4 O.O.3d 74, 78, 361 N.E.2d 1330, 1335, the court stated:

"[I]mpeachment of a witness by showing bias or prejudice does not require the foundation necessary for impeaching a prior inconsistent statement." See, also, *State v. Carlson* (1986), 31 Ohio App.3d 72, 31 OBR 112, 508 N.E.2d 999.

Finally, appellant appears to be arguing that reversal is required because White's testimony on cross-examination that he was homosexual was irrelevant and prejudicial to appellant's case. Evid.R. 607 provides that "[t]he credibility of a witness may be attacked by any party * * *." Impeachment is, by its very nature and design, nothing if not prejudicial. We have already determined that White's testimony was relevant in that it tended to show his bias toward appellant. See Evid.R. 401. Testimony concerning White's homosexuality alone may very well have been irrelevant and thus inadmissible. See Evid.R. 402. Here, however, White's testimony concerning his homosexuality, together with his testimony concerning his homosexual rela-

---

3. Evid.R. 616, which governs impeachment by bias, was added to the Rules of Evidence in 1991. The rule first became effective on July 1, 1991, several months after the trial of the instant case, and thus is inapplicable to the case at bar.

tionship with appellant, was adduced on cross-examination to demonstrate his bias in favor of appellant. Accordingly, we find no error.

Based upon the foregoing, appellant's second assignment of error is overruled, and the judgment is affirmed.

*Judgment affirmed.*

Peter B. Abele, J., concurs.

Grey, J., concurs separately.

Grey, Judge, concurring.

I concur in the judgment and opinion, but feel compelled to comment on how the issue of the witness's homosexuality was presented by the prosecution.

Such a question is charged with potential prejudicial effect, and in the vernacular of trial practice, "a bombshell." This court has seen too many cases where trial counsel, in both civil and criminal cases, will lob that bombshell into the middle of a trial so the jury can hear it and be prejudiced by it. They know the so-called curative instruction of the judge to "disregard" the bombshell is meaningless. This tactic makes the ultimate judgments more uncertain and even makes the whole trial process less reliable as a truth-finding process. Then this court must wrestle with the question of whether this deliberate act is "only harmless error."

In this case, counsel for the state acted in accord with the best standards of professional responsibility. Knowing that the question might be prejudicial, Prosecuting Attorney Warner approached the bench for a ruling before asking the question. This is the way it ought to be done to ensure fair trials, and I believe counsel's conscientiousness should not go unmentioned.

Thus, I concur.