OPINION
Defendant-Appellant, Angela D. Moore, brings this appeal from a jury verdict in the Marysville Municipal Court finding Appellant guilty of the offense of attempted theft. For the reasons set forth in the following opinion, we reverse the trial court's judgment.
The facts in this matter are largely undisputed. On July 11, 2000, Angela D. Moore ("Appellant") was driving home from her evening nursing class at the Ohio State University. Noticing that her fuel tank was nearing empty, she began looking for a place to find help. She came upon Rolling Meadows Golf Course, which had two barns with a security light and a parked truck nearby. Appellant entered the access road to the golf course and found two fuel tanks near the barn. Appellant parked her car near the tanks and proceeded to look for help. She began flashing her lights and honking her horn at a nearby farm in order to attract the attention of anyone willing to assist.
Jeffrey J. Frisch, Union County Deputy Sergeant ("Sergeant Frisch"), was on routine night auto patrol of businesses in the county. He had turned out his lights prior to approaching Rolling Meadows Golf Course, as was his custom before entering businesses in order to surprise individuals who may be present. As he turned into the driveway back to the golf course he had problems finding the drive and turned on his parking lights. As he sat orienting himself he saw Appellant walking up the pathway from the golf course fuel pump area toward his car. Sergeant Frisch exited his car. At this point, Appellant told the deputy she did not think she had enough fuel to get home and asked him if he could take her to get some gas, stating that she had money in order to do so.
Sergeant Frisch noticed Appellant's vehicle parked next to the fuel tanks. Further, he observed that the pump handle and hose to the diesel tank were out of place and that there was diesel fuel residue around the fueling cap of Appellant's vehicle. Sergeant Frisch then began questioning Appellant about whether she had attempted to take fuel from the pumps, which she denied. Three additional police officers, who subsequently arrived at the scene, and Robert Barney ("Barney"), the owner of Rolling Meadows Golf Course, also noted the location of Appellant's vehicle and the residue of fuel around the fueling cap of that vehicle. One police officer stated that the nozzle and hose of the diesel fuel tank were out of place, having been laid over the tank instead of being placed in the holster. Barney was asked to assess the situation and determine if Appellant had taken any fuel. He was unable to state whether any fuel was taken from him that night.
Based on these events, Appellant was placed under arrest for criminal trespassing and theft and her car was impounded. Appellant was then tried in the Marysville Municipal Court on the charges. Appellant was found not guilty of criminal trespass and theft, but was found guilty of the lesser-included offense of attempted theft. Appellant was sentenced to thirty days incarceration in the Union County Jail, fifteen days of which was suspended. Appellant was also placed on probation for three years and was assessed a fine of $300.00 plus costs of the proceedings. This appeal followed.
Appellant presents the following as her assignments of error on appeal:
 Assignment of Error I
The trial court erred when Appellant was denied her right to cross-examine an adverse witness on bias, prejudice and motive to misrepresent as provided by the Confrontation Clause of theSixth Amendment to the United States Constitution applied through theFourteenth Amendment, Section 10, Article I of the Ohio Constitution, Ohio Rule of Evidence 611(A) and (B), and Ohio Rule of Evidence 616(A).
During the trial, the court prohibited Appellant from cross-examining Sergeant Frisch on his bias and motive to misrepresent the facts and circumstances surrounding the charges. Upon offer of proof, Sergeant Frisch testified that at the time of the alleged incident, he recognized Appellant as the woman who he had been informed was, and who he believed to be, responsible for the demotion of one of the other deputies.
The Sixth Amendment to the Constitution of the United States provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to * * * be confronted with the witnesses against him; * * *." Further, Article I, Section 10 of the Ohio Constitution provides, in relevant part: "In any trial, in any court, the party accused shall be allowed to appear in person and with counsel, * * * to meet the witnesses face to face, * * *." The Ohio Rules of Evidence define the scope of this right of confrontation available to an accused by providing, in relevant part:
 Rule 611. Mode and Order of Interrogation and Presentation
 (A) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
 (B) Scope of cross-examination. Cross-examination shall be permitted on all relevant matters and matters affecting credibility.
Rule 616. Bias of Witness
 In addition to other methods, a witness may be impeached by any of the following methods:
 (A) Bias. Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the evidence or by extrinsic evidence.
Evid.R. 611(A), (B), 616(A).
The scope of cross-examination rests within the sound discretion of the trial court, viewed in the context of the specific facts in each case, and such an exercise of discretion will not be disturbed absent a clear showing of an abuse of discretion. State v. Williams (May 19, 1986), Allen App. No. 1-85-2, unreported.
While courts have broad discretion in restricting the presentation of evidence, potential bias or interest on the part of a witness as to disputed evidence is always considered highly relevant, and courts must be reluctant to restrict the trier of fact's consideration of such testimony; if such testimony is excluded, and it is vital to either the state's case or to the defense, the trial court has abused its discretion and reversible error has occurred. State v. Ferguson (1983),5 Ohio St.3d 160, 165-166.
In Ferguson, the trial court prevented the jury from considering the bias and prejudice of a witness based on the witness' financial motivation for providing testimony. Id at 166. The majority held that it was error to exclude the testimony, as the record did not establish that the error was harmless beyond a reasonable doubt. Id. The majority followed the rule that finding error to be harmless is appropriate only where there is "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." Id at 166, fn. 5.
In the present cause of action, we believe that the trial court's restriction of Appellant's right to cross-examine an adverse witness, as well as its limitation of her right to testify on direct examination, in order to establish Sergeant Frisch's bias, prejudice, and motive to misrepresent the evidence, was not harmless beyond a reasonable doubt.
R.C. 2923.02 provides, in relevant part:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
The jury was presented with evidence that Appellant could have formed the necessary criminal intent to steal the diesel fuel from the golf course. Moreover, the jury was presented with evidence that Appellant may have engaged in conduct that, if successful, would have led to theft. Evidence was presented that Appellant had nearly run out of gas and was looking for fuel when she happened upon the Rolling Meadows Golf Course. Further, the jury was presented with evidence that there were two large gas tanks by which Appellant parked her vehicle; one tank was white and labeled "unleaded," and the other tank was red and unlabeled, although evidence was presented that the red tank was actually filled with diesel fuel. Evidence was also presented that the white tank filled with unleaded fuel was actually locked, preventing removal of the nozzle from the holster.
Further evidence was presented that the red tank, upon inspection by police at the scene of the alleged theft, was unlocked, the nozzle was not in its holster, instead having been laid over the top of the tank, and diesel fuel was found on Appellant's vehicle on and around the filling port. Four individuals, including three police officers and the owner of the golf course, testified that the substance on Appellant's vehicle was diesel fuel. Evidence was also presented that the red diesel tank was not plugged in, preventing full flow of the fuel, although further evidence demonstrated that when the nozzle is removed, there is remaining fuel in the nozzle which would spill out if one attempted to put it in a vehicle.
Subsequent to the presentation of the above evidence, however, Appellant testified that she did not know how the diesel fuel became present around the gas port of her vehicle, stating that either the police officers were mistaken, or they had intentionally placed the fuel on her vehicle. She further testified that Sergeant Frisch might have had a motive to plant such fuel on her vehicle, due to his belief that Appellant had caused the demotion of a fellow officer, although she could not state for certain whether the officers were trying to frame her. The court then prohibited testimony concerning her relationship with the demoted officer, which may have shed light on Sergeant Frisch's alleged motives at the scene of the incident and subsequently in the courtroom. Testimony from Sergeant Frisch and Appellant concerning these motives is relevant to this cause of action, as the jury could have potentially arrived at a different decision in the presence of testimony favorable to Appellant in this regard. This excluded testimony was vital to Appellant's defense, and the trial court, as a result, abused its discretion in excluding the evidence.
Based on the foregoing, it is clear that the court's error in excluding such relevant testimony was not harmless. Accordingly, Appellants first assignment of error is well taken and is therefore sustained.
 Assignment of Error II
The trial court erred by denying Appellant effective assistance of counsel and due process of law by limiting her right to testify on direct examination, to establish an adverse witness's bias, prejudice, and motive to misrepresent, in violation of the Sixth andFourteenth Amendments to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution, Ohio Rule of Evidence 611(A), and Ohio Rule of Evidence 616(A).
In addition to prohibiting Appellant from cross-examining Sergeant Frisch on his bias and motive to misrepresent the facts and circumstances surrounding the charges, the court also prohibited Appellant from testifying about Sergeant Frisch's potential bias and motive to misrepresent. As these issues were addressed in the previous assignment of error, this assignment of error is rendered moot.
 Assignment of Error III
The trial court erred when Appellant was denied a jury instruction on abandonment pursuant to Ohio Criminal Rule of Procedure 30 and Ohio Revised Code Sections 2901.05(A) and 2923.02(D).
After presentation of the evidence and testimony of the witnesses, Appellant requested an instruction on the affirmative defense of abandonment in response to Appellee having requested a jury instruction on the lesser-included offense of attempted theft. Appellant's request was denied and subsequently became the subject of this assignment of error.
Regarding the affirmative defense of abandonment to a charge of attempted theft, R.C. 2923.02(D) provides in pertinent part:
 It is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose.
If the affirmative defense of abandonment has not been asserted at trial and was "neither argued by Appellant nor implicated by the evidence," it is proper for a court not to instruct a jury on abandonment as such instruction tends to confuse a jury. State v. Jarrells (Feb. 7, 2000), Auglaize App. No. 2-99-22, unreported at *4. In Jarrells, this court agreed with the trial court's decision to deny an instruction on abandonment, as the trial court reasoned:
 [T]he instruction as requested would have the Court instruct the Jury about an affirmative defense without an explanation of the affirmative defense, how the affirmative defense worked, what the burden of proof was, what must be shown, to what degree it must be shown, [and] by whom it must be shown. Id.
In the present cause of action, the record reflects that after a discussion between the court and counsel, the court declined to charge the jury on abandonment.
After carefully reviewing the entire record before us, Appellant clearly failed to assert the defense of abandonment at trial. And, the evidence does not implicate such a defense. Therefore, the trial court acted properly in refusing to instruct the jury on abandonment, as such an instruction would have served to confuse the jury. As a result, Appellant's third assignment of error is not well taken and is therefore overruled.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed.
Judgment reversed.
 SHAW and HADLEY, JJ., concur.