OPINION
Appellant sets forth the following assignments of error:
 "I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE INITIAL TRAFFIC STOP WAS IMPROPER AS BEING: (A) THE RESULT OF AN UNCORROBORATED TIP; AND/OR (B) OUTSIDE THE ARRESTING OFFICER'S JURISDICTION.
 "II. THE TRIAL COURT ERRED IN EXCLUDING EXPERT TESTIMONY BASED UPON A LOCAL COURT ORDER ON WITNESS DISCLOSURE WHICH CONFLICTS WITH CRIMINAL RULE 16.
 "III. THE TRIAL COURT ERRED IN NOT DECLARING A MISTRIAL WHEN A STATE WITNESS IMPROPERLY CONVERSED WITH JURORS DURING A BREAK AND ALSO MADE INFLAMMATORY REMARKS WHILE TESTIFYING."
The facts that are relevant to the issues raised on appeal are as follows. On April 27, 1996, appellant was arrested for driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and (A)(3). On August 15, 1996, appellant filed a motion to suppress all evidence gathered as a result of the stop. In his motion, appellant asserted that: a) there was no reasonable and articulable basis for the stop; b) there was no probable cause for the arrest; c) all physical evidence obtained by the police was the product of an illegal seizure; d) any statements made by appellant were obtained by the police in violation of appellant's rights, and e) the procedures used by the State Highway Patrol to maintain the breathalyzer machine did not conform to specifications contained in the Ohio Revised Code and the Ohio Administrative Code.
A hearing on the motion to suppress was set for March 10, 1997. Prior to the hearing, the state dismissed the charge of driving with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(3).
At the motion hearing, Deputy Edward Wimmer, with the Erie County Sheriff's Office, testified that on April 27, 1996, he was on patrol when he received a message from the dispatcher that a motorist had called from his cellular phone to report an erratic driver in a red Ford pick-up truck pulling an empty boat trailer behind it on State Route 2. Wimmer stated that when he received the dispatch he was on U.S. 6 in Erie County and that when he caught up with appellant's vehicle about three minutes later both vehicles had entered Ottawa County. Wimmer testified that he had to drive at a speed of ninety to one hundred m.p.h. to catch up with appellant. Wimmer testified further that after he stopped appellant and approached the car he noticed a strong odor of alcohol and saw that appellant had bloodshot, glassy eyes. He also stated that appellant's speech was slurred. After Wimmer told appellant that the State Highway Patrol was en route, Jeff Jones, who had placed the call to the police, pulled up. Wimmer stated that he did not administer any field sobriety tests. When Trooper Tasha Riter, with the State Highway Patrol, arrived on the scene, Wimmer spoke to her and then stood by while Riter administered field sobriety tests. Wimmer testified that appellant was unsteady on his feet when performing the tests and that he heard Trooper Riter read appellant his Miranda rights.
Trooper Riter testified that when she arrived on the scene she spoke with appellant and noticed that his eyes were bloodshot and glassy, his speech was slurred and there was a strong odor of alcoholic beverage on his breath. Riter stated that after speaking to appellant briefly she administered the field sobriety tests. She testified that appellant displayed six "clues" of intoxication when she administered the horizontal gaze nystagmus test and that appellant was unsteady on his feet while performing the one-leg stand test and the walk-and-turn test. Riter testified that she administered a portable breath test which showed a breath alcohol content of .15 percent and read him his Miranda rights before transporting him to the State Highway Patrol post. Riter stated that she did not observe appellant while he was driving and that her information on appellant's erratic driving came from Deputy Wimmer and the person who had called from his cellular phone. She stated that when she spoke to Jeff Jones at the scene he told her he had seen appellant driving very fast and that appellant went left of center, forced three cars off the road, passed Jones, continued driving at a high speed and cut off a large truck.
At the conclusion of the hearing, the trial court found that Deputy Wimmer had reasonable and articulable suspicion to stop and detain appellant based on the dispatch which relayed the call from Jeff Jones. The trial court further found that Trooper Riter had probable cause to arrest appellant based on: a) the information relayed by Jones; b) appellant's performance on the field sobriety test; c) her observations of appellant's physical demeanor; and d) the result of the portable breath test. Accordingly, the trial court denied appellant's motion to suppress.
The case came to trial before a jury on April 22, 1997. At trial, Jeff Jones testified as to the events which prompted him to call the police after he observed appellant driving on State Route 4. Jones stated that he first noticed appellant approaching him from behind and traveling very fast. He testified that appellant then dropped back and went left of the center line, forcing an oncoming car to go off the two-lane road. Jones stated that appellant continued to weave on the roadway, sometimes crossing the center line and sometimes crossing the white line on the outside edge. Jones again saw appellant cross the center line and force another oncoming car to leave the road. At that point, Jones pulled over so that appellant could pass him and he then noted appellant's license plate number and called the police from his cellular phone. Jones gave the dispatcher appellant's licence plate number and their location and continued to follow appellant onto Route 2. Jones testified further that he was traveling at about eighty-five m.p.h. and could not keep up with appellant. He stated that he was on the phone with the dispatcher the entire time, keeping her informed of his observations and location. When Jones was passed by a sheriff's car, he told the dispatcher that the deputy was approaching appellant and Jones then slowed down. Jones pulled over when he arrived on the scene of the stop two or three miles farther along and told Riter what he had seen.
Barbara Vandersluis testified that she is the Ohio State Highway Patrol dispatcher who handled the call from Jones. Vandersluis stated that she broadcast Jones' description of appellant's car, the license plate number and the details Jones gave her about appellant's erratic driving. She stated that her telephone contact with Jones lasted for about ten minutes.
Robert Wilson testified that he was a passenger in Jeff Jones' car on the night of appellant's arrest. Wilson testified as to seeing appellant's car driving erratically and said he saw it run two cars off the road.
Sergeant Glen Petersen, with the State Highway Patrol, testified that he drove to the scene when Trooper Riter asked for his assistance with the stop. Petersen stated that after he arrived on the scene he noticed that appellant appeared to be under the influence of alcohol.
Deputy Wimmer provided essentially the same testimony as to the facts surrounding the stop as that given during the hearing on the motion to suppress. Trooper Riter also provided essentially the same testimony as that given during the suppression hearing. Riter further testified that appellant repeatedly asked her to let him go because he was a police officer and that appellant had difficulty deciding whether or not he wanted to take the field sobriety tests.
At the conclusion of the trial, the jury found appellant guilty of driving while under the influence of alcohol. The court entered judgment on the jury verdict and sentenced appellant. It is from this judgment that appellant has filed this appeal.
Appellant asserts in his first assignment of error that the trial court erred by denying his motion to suppress because the initial stop was the result of an uncorroborated tip and was outside the arresting officer's jurisdiction.
In examining a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. State v. Depew (1988), 38 Ohio St.3d 275; State v. Fanning (1982), 1 Ohio St.3d 19. Where the factual findings of the trial court are clearly supported by the evidence, its ruling will not be disturbed on appeal, absent an error of law. Depew, supra.
Appellant challenges the validity of the stop, claiming it was the result of an "uncorroborated tip." He asserts that the information the arresting officer gathered from Jones and his passenger at the scene of the stop was "secondhand and uncorroborated" and "from someone with no prior contacts with law enforcement and no reliable track record." Appellant does not explain the relevance herein of a witness's track record or prior contacts with law enforcement. He further challenges Jones' credibility in light of Jones' admission that he exceeded the speed limit in order to maintain visual contact with appellant's car until the police caught up with him.
In order to justify an investigatory stop of an automobile, the police officer must demonstrate specific and articulable facts which when considered with the rational inferences therefrom would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual to be stopped may be involved in illegal activity. See State v.Bobo (1988), 37 Ohio St.3d 177; Terry v. Ohio (1968), 392 U.S. 1;United States v. Brignoni-Ponce (1975), 422 U.S. 873; State v.Freeman (1980), 64 Ohio St.2d 291.
Reasonable suspicion to effectuate an investigatory stop may arise from information provided to police by an anonymous informant. See Alabama v. White (1990), 496 U.S. 325, 331. The "totality of the circumstances" analysis must then be used to determine whether the informants's tip was sufficiently reliable to justify the investigatory stop. Id. See, also, this court's decision in State v. Wilson (Oct. 29, 1993), Lucas App. No. L-93-084, unreported.
This court must now make an independent determination as to whether the information provided by Jones established reasonable suspicion to make the investigatory stop of appellant's vehicle.
In State v. Skripick (Oct. 16, 1987), Lucas App. No. L-87-041, this court found that an anonymous and unverified citizens' band report that a vehicle had struck a pedestrian provided sufficiently specific and articulable facts to form a proper basis for a reasonable suspicion. In support of the officer's actions in Skripick, this court cited Adams v. Williams
(1972), 407 U.S. 143, in which the United States Supreme Court stated at 143 that "the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape."
In State v. Wilson, supra, this court upheld an investigatory stop that was made based on a license plate number and description of a car given in a telephone tip from a hospital nurse who had observed a man she believed to be intoxicated leave the emergency room and drive away. In Wilson, this court reasoned that given the danger of a drunk driver proceeding down a major city street through heavy traffic, it was reasonable for the police to make an immediate investigatory stop following the call from the hospital emergency room. See, also, this court's decision in State v. Hodge (Dec. 15, 1995), Wood App. No. WD-95-041, in which we found that the police were justified in making an investigatory stop based on a telephone call reporting a possibly intoxicated driver.
In the case before us, the call to the police was made by a person who stayed on the line with the dispatcher for approximately ten minutes, until he saw that Deputy Wimmer was pulling up behind appellant's vehicle. Jeff Jones gave the dispatcher appellant's license plate number and a description of the vehicle, and described in detail appellant's erratic driving. Jones' testimony was very clear as to how long he observed appellant before calling in his license plate number and as to exactly what he saw before and during the call. We find therefore that, under the circumstances of this case, the police were justified in assuming the truthfulness of the information relayed by Jones and in effecting a stop based thereon. Accordingly, this court finds that the facts of this case are more than sufficient to support the trial court's ruling that the investigatory stop was justified.
In his second argument in support of his first assignment of error, appellant asserts that the trial court incorrectly found that Deputy Wimmer properly made an extra-territorial stop in Ottawa County under authority of R.C.2935.03(D).
R.C. 2935.03(D) provides police officers with extra-territorial authority to arrest following a pursuit which was initiated within the officer's own political subdivision. In this case, appellant was first noticed driving erratically in Erie County and Deputy Wimmer's pursuit began in that county. Upon consideration of the record of proceedings before the trial court, this court finds that there was substantial evidence presented to support the trial court's finding that, pursuant to R.C.2935.03(D), Deputy Wimmer lawfully stopped appellant following a pursuit which was initiated within the limits of Erie County.
Upon consideration of the foregoing, this court finds that the trial court did not err by denying appellant's motion to suppress. Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the trial court erred by excluding expert testimony which was not disclosed to the state or the trial court until a few days before trial. Appellant argues that Local Rule 23 of the Port Clinton Municipal Court, which the trial court cited when it ruled that appellant would not be permitted to call his expert witness, conflicts with Crim.R. 16, which he asserts allows additions to discovery to be disclosed "right up until the time of trial." Appellant asserts that Ohio's discovery rules may not be avoided by local rules and practices and identifies Local Rule 23 as a "[l]ocal witness disclosure rule involving time limits or restrictions." Appellee asserts in response that the state did not receive notice of appellant's plan to introduce its expert until the day before trial and that its case would have been highly prejudiced if the witness were allowed to testify.
The record in this case shows that on August 5, 1996, the trial court ordered the parties to complete discovery within twenty days of the order. Trial did not commence until April 22, 1997, and notice of that date was sent to the parties on March 13, 1997. The defense therefore had a period of nearly seven months between the August 1996 order and notification of the trial date in which it could have supplemented discovery. As to appellant's argument that Local Rule 23 is in conflict with Crim.R. 16, this court has reviewed the local rule and finds that, not only is there no conflict, but the rule simply does not refer to discovery matters. Local Rule 23 sets forth the procedures used by the Port Clinton Municipal Court to schedule jury trial dates. The only reason Local Rule 23 is relevant at all to this case is because the trial court referred to the rule when it mentioned when this case was scheduled for trial.
As to the trial court's ruling which prohibited the expert's testimony, the regulation of discovery is a matter within the sound discretion of the court, pursuant to Crim.R. 16(E).State v. Weind (1977), 50 Ohio St.2d 224, 235. Further, Crim.R. 16(E)(3) gives the trial court discretion in selecting the appropriate sanction for a discovery violation. State v.Apanovitch (1987), 33 Ohio St.3d 19; State v. Edwards (1976),49 Ohio St.2d 31, 42. "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, paragraph two of the syllabus.
Upon consideration of the entire record of proceedings in the trial court, this court finds that the trial court did not abuse its discretion by excluding appellant's witness. The trial court clearly inquired into the circumstances surrounding the violation but it appears from the record that defense counsel did not provide the court with an explanation for why he waited until trial was imminent to contact his witness. As to the sanction of prohibiting the witness to testify, Crim.R. 16(E) provides:
 "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
The only alternative for the trial court in this situation might have been to continue the trial in order to give the state time to prepare to cross-examine the witness. The trial court clearly considered the fact that the parties had been aware of the trial date for over a month and did not think it acceptable to further delay the trial. The trial court also considered the possibility of prejudice to the state if the witness were permitted to testify.
The court in Papadelis stated that the sanction of exclusion is impermissible only when it acts to completely deny the defendant his or her right to present a defense. This court finds that appellant was not "completely denied" the right to present a defense by the trial court's ruling. Accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that the trial court erred by not declaring a mistrial after one of the state's witnesses conversed with the jurors and made an "inflammatory" remark while testifying.
At a conference in chambers at the conclusion of the state's case, the trial court addressed the two issues raised by the defense concerning Trooper Riter's testimony. Both counsel and Trooper Riter were present. The first issue arose out of a statement Riter made during direct examination when she referred to a conversation she had with appellant as she drove him to the Post after his arrest. The testimony to which appellant objected was as follows:
 "* * * [A]s we were going to the Post, I thought maybe if I told him something about an experience that I had that maybe it would help him understand the position of others around him. Prior when I was younger, I lost four family members that were struck by a DUI driver."
At the time the statement was made, appellant objected. The trial court sustained the objection and instructed the jury to disregard the statement. At the hearing in chambers, the trial court explained to Riter that he sustained the objection so that the jury would not be confused or inflamed.
The trial court then addressed a comment Riter made to the jurors after her testimony. Riter explained to the trial court that during a recess she walked past some jurors and said, "I have some extra-strength Tylenol if anybody wants any." Upon questioning by the trial court, Riter stated that no one responded to her or commented in any way and said that was the extent of her comments. The trial court then stated that it was satisfied that Riter's comment, although not appropriate behavior by a witness, did not prejudice either party. At that point, the defense moved for a mistrial, which was denied.
Appellant asserts that the two incidents described above prejudiced him and that the trial court therefore abused its discretion by not declaring a mistrial.
Generally, the granting or denying of a mistrial rests within the sound discretion of the trial court. State v. Glover
(1988), 35 Ohio St.3d 18.
This court has carefully examined the transcript of proceedings relevant to the incidents in question. In this case, the question before the jury was whether appellant was driving while under the influence of alcohol on the night of April 27, 1996. Trooper Riter's statement that she had a bottle of Tylenol was not relevant to the matter pending before the jury. As to Trooper Riter's other comment, there is no correlation between her statement about her relatives who died in a DUI-related accident and the issue of whether appellant was driving under the influence of alcohol on the night he was arrested. This court presumes the effectiveness of the trial court's instruction following Trooper Riter's comment about her relatives who died in the accident. SeeState v. Ferguson (1983), 5 Ohio St.3d 160, 163. Further, there is no evidence in the record that the two statements made by Trooper Riter predisposed the jury in the state's favor or influenced the jury's ability to try the issues before it fairly. Accordingly, we find that the trial court did not abuse its discretion by failing to grant a mistrial and appellant's third assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Ottawa County Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
George M. Glasser, J.
 Melvin L. Resnick, J.
 Richard W. Knepper, J.
CONCUR.