OPINION
{¶ 1} Defendant-appellant, David R. Baker, was indicted on one count of felonious assault, alleging that he knowingly caused serious physical harm to Mark Steinert on May 10, 2001. After a jury trial, appellant was convicted of felonious assault and sentenced to three years of imprisonment.
 {¶ 2} Appellant filed a notice of appeal and raises the following assignments of error:
 {¶ 3} "First Assignment of Error: The court erroneously refused to allow the defense to inquire as to the prosecuting witness' contemplated civil action against the defendant in order to demonstrate bias or prejudice arising from a financial interest in the outcome of the criminal trial.
 {¶ 4} "Second Assignment of Error: The court erroneously refused to allow introduction of a prior consistent statement by the defendant offered to rebut prosecution claims of recent fabrication with respect to his testimony concerning the events leading to prosecution.
 {¶ 5} "Third Assignment of Error: The court erroneously refused to instruct the jury on the lesser included offense of reckless assault.
 {¶ 6} "Fourth Assignment of Error: Appellant's conviction was not supported by the evidence in that: (1) The affirmative defense of self-defense was proven as a matter of law. (2) The evidence did not establish appellant knowingly caused serious physical harm to another. (3) The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29. (4) Conviction was against the manifest weight of the evidence.
 {¶ 7} "Fifth Assignment of Error: The cumulative effect of the errors advanced in this brief entitles appellant to a new trial."
 {¶ 8} Appellant's conviction was the result of events which occurred on May 10, 2001. Columbus Police Officer Joel Huffman was dispatched to Burgess Avenue in Franklin County, concerning a fight between two men. When Officer Huffman arrived, he found Mark Steinert standing in his driveway bleeding because part of his nose was missing. Officer Huffman testified that, after speaking to Steinert and calling a medical squad, he went across the street to appellant's house and spoke to appellant. Appellant told Officer Huffman that he had been involved in a fight with Steinert. Appellant stated Steinert had raised his hands up which appellant interpreted as a defensive stance and so appellant hit him. Appellant stated that he had tried to walk away but Steinert grabbed him and held him down in a headlock, so appellant bit Steinert's nose in order to get free. Steinert stated he had been scared and was sorry for what had happened.
 {¶ 9} Mark Steinert testified that he had arrived home at approximately 8:30 and discovered that his daughter was very upset because one of her cats had been shot. This was the third cat that had been killed. Steinert heard a rumor that appellant had been bragging about killing cats and so Steinert went to appellant's house to confront him. Steinert met appellant at the sidewalk at the bottom of appellant's driveway. Steinert testified that he approached appellant and asked him about the rumor that he had bragged about killing cats and appellant responded: "Keep your fucking cats out of my yard." (Tr. at 52.) Steinert stated he told appellant that was "not cool" and asked him not to do it again. Appellant again cursed at Steinert and then hit Steinert in the face.
 {¶ 10} Steinert testified that he did not put his hand in a fist, lift his arm in a threatening manner, push or lunge at appellant at any time before getting hit. After getting hit, Steinert grabbed hold of appellant and they ended up wrestling on the ground. Appellant's wife started hitting Steinert in the head with a remote control and he ducked his head. At that time, appellant bit Steinert's nose and the bite lasted approximately fifteen seconds. Steinert denied that he had put appellant in a headlock, put his hands on appellant's neck or attempted to strangle him at any time. Appellant's father broke up the fight, and appellant yelled threats at Steinert as he walked back to his house.
 {¶ 11} Steinert testified that he went to the emergency room where he received several stitches and the doctors attempted to sew a piece of his nose back together. Steinert testified that his recovery was very painful and his nose is currently numb and permanently disfigured.
 {¶ 12} Steinert's next door neighbor testified that she drove up and parked on the street just as appellant and Steinert met at the end of appellant's driveway. She stated that the two looked like they were having words and, after two or three minutes, appellant hit Steinert in the face. She did not see Steinert raise his hand before appellant hit him. She saw appellant's wife hitting Steinert and his father broke up the fight. Appellant's next door neighbor, Theresa Parsley, testified that Steinert had his hands in appellant's face and appellant tried to back away before hitting Steinert.
 {¶ 13} Another neighbor from a few doors down the street testified that Steinert was pointing at appellant and appellant took a couple steps backward. She did not see appellant punch Steinert, but saw the two on the ground struggling.
 {¶ 14} Appellant testified that Steinert walked towards him very aggressively and smelled alcohol on his breath. Appellant started to walk away from Steinert but, as he was turning, Steinert had his hand in a fist and brought his arm up as if to hit appellant, so appellant hit him in the face. At that point, Steinert tackled appellant and had appellant in a headlock. Appellant felt as if he would pass out and bit Steinert in an effort to remove him. Appellant stated that he did not know where he bit Steinert, he just did it to get Steinert away from him because he could not breathe.
 {¶ 15} By the first assignment of error, appellant contends that the trial court erroneously refused to allow the defense to inquire as to the prosecuting witness' contemplated civil action against him in order to demonstrate bias or prejudice arising from a financial interest in the outcome of the criminal trial. During cross-examination of Steinert, appellant's counsel asked Steinert concerning a contemplated civil action against appellant in order to demonstrate bias. The questioning occurred in the following manner:
 {¶ 16} "Q. In fact, through an attorney, you've indicated that you intend to sue Mr. Baker, isn't that true?
 {¶ 17} "Mr. Lowe: Objection.
 {¶ 18} "The Witness: No, sir.
 {¶ 19} "The Court: Just a moment. Basis?
 {¶ 20} "Mr. Lowe: I'm not sure what the relevance of a civil suit has to do with this.
 {¶ 21} "Mr. Tyack: Bias, Your Honor.
 {¶ 22} "The Court: Overruled. You can answer. You can answer.
 {¶ 23} "A. No, sir. I had an attorney, he was a good friend of mine, and he was giving me legal counsel about everything that's going to happen and everything like that. We had discussed, you know, a suit later in time or something, but he passed away several months ago, and I have not sought counsel or anything. I have not tried to find a lawyer or anything like that.
 {¶ 24} "Q. (By Mr. Tyack) You consulted with Attorney Gerald Wolfe?
 {¶ 25} "A. That was my friend.
 {¶ 26} "Q. And you're aware that Mr. Wolfe wrote a letter to Mr. Baker stating you were making a claim against him?
 {¶ 27} "Mr. Lowe: Objection.
 {¶ 28} "The Witness: I know he wrote a letter.
 {¶ 29} "The Court: Hold on a second. The Court is going to sustain.
 {¶ 30} "Q. (By Mr. Tyack) Bottom line is, sir, you have a financial interest in the outcome of this proceeding, don't you?
 {¶ 31} "A. No, sir, not at all.
 {¶ 32} "Q. Is that your testimony here today?
 {¶ 33} "A. Yes, sir.
 {¶ 34} "The Court: I am going to instruct the jurors to disregard the last two questions because, just for the record, I sustained the State's objection. So there should not have been any further questions along those lines. So the Court will instruct the jurors to disregard the last two questions, disregard the responses and treat that as though you never heard it, okay?" (Tr. at 84-86.)
 {¶ 35} After the jury was excused for the day, defense counsel made the following proffer:
 {¶ 36} "I would also like to proffer, for the record, if allowed, I would have questioned Mr. Steinert further about the scope of his retention of Gerald P. Wolfe, Attorney-at-Law, his intentions in doing so.
 {¶ 37} "I believe the evidence would have come out that on June 27, 2001, Mr. Wolfe wrote a letter to Mr. Baker, which I have in my possession, indicating that Mr. Steinert is making a claim against Mr. Baker, and that Mr. Baker is hereby instructed not to `secrete or transfer any assets that you may have.'
 {¶ 38} "So, Your Honor, I would like to proffer the fact that I believe Mr. Steinert would have testified that, yes, he had spoke with Mr. Wolfe, and, yes, he was making a claim against Mr. Baker for the incident of May 10, 2001.
 {¶ 39} "With that, Your Honor, I have nothing further." (Tr. at 95.)
 {¶ 40} Evid.R. 611(B) provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." The scope of cross-examination is a matter within the discretion of the trial court. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 41} In State v. Ferguson (1983), 5 Ohio St.3d 160, the Supreme Court of Ohio determined that the bias of a witness derived from a pecuniary interest in the outcome of a criminal proceeding affects credibility under Evid.R. 611(B). An accused is permitted to cross-examine the prosecuting witness regarding pending or contemplated civil action against the accused in order to demonstrate bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution. Id. Some courts have required that the defense establish that either a civil action is pending or that the prosecuting witness has consulted an attorney or taken other affirmative action in contemplation of a civil suit. See State v. Patton (1991), 74 Ohio App.3d 224, 228.
 {¶ 42} In this case, the defense did establish that the prosecuting witness consulted an attorney but the court excluded evidence he had taken other affirmative action in contemplation of a civil suit. The attorney had sent a letter to appellant on June 27, 2001, which provides as follows:
 {¶ 43} "The undersigned represents Mark Steinert in connection with a claim he has arising out of your conduct on May 10, 2001. As you might suspect, Mr. Steinert has experienced great pain and suffering as a result of the injuries he sustained that date. Additionally, he has incurred medical expense and will incur future expense in amounts not yet known.
 {¶ 44} "The purpose of this letter is to put you on notice of Mr. Steinert's claim. Any action by you to secrete or transfer any assets you may have will be viewed by us, and no doubt by the courts, as a fraudulent effort to avoid the legitimate claims of a creditor. If you have any insurance coverage that might impact on this situation I would suggest you forward a copy of this letter to your carrier." (Defendant's Exhibit A.)
 {¶ 45} This letter clearly constitutes affirmative action in contemplation of a civil suit and provides a different connotation than Steinert testified to concerning his contemplated action. Steinert testified that he had consulted a friend who was an attorney but had done little more than that. Because the trial court excluded further testimony and the letter, the jury was not presented with an accurate picture of the action Steinert and his counsel had taken. The trial court abused its discretion in excluding the evidence and limiting the cross-examination and preventing defense counsel from providing the jury with evidence concerning Steinert's possible bias derived from a pecuniary interest in the outcome of a criminal proceeding. Appellant's first assignment of error is well-taken.
 {¶ 46} By the second assignment of error, appellant contends that the trial court erroneously refused to allow introduction of a prior consistent statement by appellant offered to rebut prosecution claims of recent fabrication with respect to his testimony concerning the events leading to prosecution. Appellant argues that, during cross-examination of appellant, through the rebuttal testimony of the police detective and closing argument, the prosecution attempted to suggest that portions of appellant's testimony were recent fabrications. The defense sought to rebut those suggestions by use of a statement appellant had written the night of the incident and taken to the prosecutor's office the next day.
 {¶ 47} The trial court has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66. As stated above, an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, supra.
 {¶ 48} Appellant argues that, pursuant to Evid.R. 801(D)(1)(b), appellant was entitled to provide his prior consistent statement to the jury to rebut the prosecution's claims of recent fabrication. Evid.R. 801(D)(1)(b) provides, as follows:
 {¶ 49} "A statement is not hearsay if:
 {¶ 50} "(1) Prior Statement By Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *." (Emphasis sic.)
 {¶ 51} This rule permits the rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story by admitting into evidence a consistent statement made by the witness prior to the time of the suggested invention or of the emergence of the motive to falsify, as tending to rebut the charge. Motorists Mut. Ins. Co. v. Vance (1985), 21 Ohio App.3d 205, 207. The courts in Ohio have generally interpreted this rule as including only prior consistent statements which were made before the prior inconsistent statements or before the existence of any motive to falsify testimony. State v. Nichols (1993), 85 Ohio App.3d 65, 71.
 {¶ 52} Appellant's statement provides, as follows:
 {¶ 53} "On the above date and approx. time, I was down to my parents at 804 S. Burgess Ave, watching the T.V. show `Cops' with my father when my mother hollard [sic] in from the outside, and said that my wife had called and said that the neighbor across the street (Mark) was at the house and wanted to talk to me.
 {¶ 54} "After abut one minute, I got up and left my parents house and proceeded across the street to my house, I noticed a man talking thru my front window from the porch, then I heard my wife say there is my husband now. The man on my porch started to walk down my driveway and met me on the sidewalk at the neighbors next door to me.
 {¶ 55} "He approached me very fast and came within approx. several inches of my face, I backed up about a foot once I smelled alcohol on his breath, and the way he was acting, very aggressive.
 {¶ 56} "He then came within several inches of my face again, and had his finger pointed within an inch of my nose and stated that there was rumors going around that I killed cats that came into my yard.
 {¶ 57} "And then he stated that he lived across the street and had four cats and that if he saw me do anything to them that he was going to kill me and my little boy, that he had did some rough time and that he wasn't to be messed with. I then backed up for the second time and told him that if there was a rumor as such, to just keep his cats on his property, because I am highly allergic to cats.
 {¶ 58} "I then told him that there was nothing else for us to talk about and as I was leaving for the third time he was yelling and started towards me, as I turned around he had his hand made into a fist and lunged at me in an attempt to hit me, I threw a few punches in defense and then I just looked at him, he then tackled me on the neighbors front law, and had me in a headlock, I could barely breathe at this point, I felt as though I was going to pass out, then I felt him hitting my face on the right side, I then started to bite him on his face to get him off of me.
 {¶ 59} "At this point my wife and father were pulling the man off of me. Once we were apart, I went to my porch, and he went to his driveway and was saying that this was not the end. At that point the police had showed up."
 {¶ 60} On cross-examination, the prosecutor asked appellant questions about whether he had told the detective several details regarding the events, such as asking him if he had told the detective that, as he backed up, he had believed that Steinert was about to hit him; that Steinert attempted to hit him but missed; that Steinert had threatened to kill his son; and, that his neck and eye had been injured. The statement appellant sought to introduce was written the evening of the events and was almost completely consistent with appellant's testimony which rebuts the charge of fabrication. Appellant's second assignment of error is well-taken.
 {¶ 61} By the third assignment of error, appellant contends that the trial court erroneously refused to instruct the jury on the lesser included offense of reckless assault and by the fifth assignment of error argues that the cumulative effect of the errors advanced in this brief entitles appellant to a new trial. These assignments of error have been rendered moot by our rulings on the previous assignments of error.
 {¶ 62} By the fourth assignment of error, appellant contends that his conviction was not supported by sufficient evidence in that: (1) the affirmative defense of self-defense was proven as a matter of law; (2) the evidence did not establish appellant knowingly caused serious physical harm to another; and that (3) the court erroneously overruled appellant's motions for acquittal pursuant to Crim.R. 29. By this assignment of error, appellant also contends that his conviction was against the manifest weight of the evidence. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 63} Appellant contends that self-defense was proven as a matter of law. Appellant argues that he was entitled to strike the first blow in self-defense and was justified in exerting non-deadly force, in the form of a bite, because Steinert was on top of him and causing him to lose consciousness. He testified that:
 {¶ 64} "And I guess without even thinking or putting any thought into it, just to get this individual off me, I bit him. I am not sure where I bit him at. I didn't know that actually until this case was going on, and, unfortunately, I bit this man, and I feel sorry for that. But he was on top of me, and that's what happened." (Tr. at 145.)
 {¶ 65} However, Steinert denied lifting his hands in a threatening manner, putting appellant in a headlock or choking him. The jury did not believe appellant established self-defense. The jury was free to believe all, part or none of the testimony of each witness who testified. State v. Long (1998), 127 Ohio App.3d 328, 335. Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. While viewing the evidence in a light favorable to the prosecution, any rational trier of fact could have found that appellant did not prove self-defense.
 {¶ 66} Appellant also contends that the evidence did not establish appellant knowingly caused serious physical harm to another. "Knowingly" is defined in R.C. 2901.22(B) as follows:
 {¶ 67} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 68} To determine whether appellant acted knowingly, his state of mind may be inferred from the totality of circumstances surrounding the incident. State v. Booth (1999), 133 Ohio App.3d 555, 562. In this case, appellant should have known that biting Steinert with as much force as he used would result in serious physical harm. While viewing the evidence in a light favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 69} Appellant also contends in his fourth assignment of error that the court erroneously overruled appellant's motions for acquittal pursuant to Crim.R. 29. Crim.R. 29(A) provides, as follows:
 {¶ 70} "The court * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"
 {¶ 71} When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, a reviewing court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511,525. Since we apply the same test as we have already discussed, the trial court did not err in overruling appellant's Crim.R. 29 motion.
 {¶ 72} Finally, by the fourth assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. This portion of the assignment of error has been rendered moot by our rulings in the first and second assignments of error. Thus, the fourth assignment of error is not well-taken.
 {¶ 73} For the foregoing reasons, appellant's first and second assignments of error are sustained, the third and fifth assignments of error are overruled as moot, and the fourth assignment of error is overruled as to the sufficiency of the evidence portions and overruled as moot as to the manifest weight of the evidence portion. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and
cause remanded.
TYACK, P.J., and KLATT, J., concur.