OPINION
{¶ 1} Appellant, Michael D. Vanek, appeals from the August 9, 2002 judgment entry of the Mentor Municipal Court, overruling appellant's motion for a new trial.[1]
 {¶ 2} On November 9, 2001, appellant was secretly indicted by the Lake County Grand Jury on one count of sexual imposition, a misdemeanor of the third degree and a violation of R.C. 2707.06(A)(1), and one count of unlawful restraint, a misdemeanor of the third degree and a violation of R.C. 2905.03.
 {¶ 3} Jennifer Ziburis ("Ziburis") filed a civil complaint against appellant on December 13, 2001, alleging claims of sexual harassment, discrimination in the workplace, retaliation, hostile/abusive workplace, and severe emotional distress, which was later dismissed. Prior to the criminal jury trial, the trial court held two pretrials. The first pretrial was held on January 15, 2002, in which appellant was represented by Attorney Mark DiCello ("Attorney DiCello"). The second pretrial was held on March 26, 2002 in which appellant discharged the services of Attorney DiCello and elected to represent himself. Also during the second pretrial, the trial court refused to admit evidence and any testimony concerning Ziburis's foregoing civil complaint against appellant in his criminal case.
 {¶ 4} On April 12, 2002, appellant's new counsel, Attorney Grant Rost, filed three motions in limine for the exclusion or suppression of evidence. Appellant's first motion in limine regarded excluding the use of an audio tape of a conversation between Ziburis and appellant on October 13, 2001, because only one side of the tape was audible. Appellant's second and third motions in limine were based on excluding the use of and reference to a particular portion of the audio tape and transcript dated October 19, 2001, as well as excluding witness statements made to the police. Pursuant to the trial court's April 23, 2002 judgment entry, appellant's second and third motions in limine were denied. However, appellant's first motion in limine was granted. The trial court stated that "[t]his tape recording is hereby excluded unless testimony of a defense witness [or appellant] makes reference to said tape recording. In which case the [p]rosecutor may be given leave to use and/or play said audio tape in cross-examination or rebuttal."
 {¶ 5} On April 26, 2002, appellant filed a motion to compel discovery in which appellee filed its response on May 15, 2002. Pursuant to the trial court's June 14, 2002 judgment entry, appellant's motion to compel was denied. Based on the June 7, 2002 hearing, the trial court stated that "[w]hen we get into the trial itself, * * * the evidence will be limited to what is set forth in the indictment, in other words, as to what occurred on October the 13th, 2001 at King's Deli between [Ziburis] and [appellant]." There were no objections made regarding the trial court's decision, and appellant did not file any additional motions objecting to this decision. A jury trial commenced on July 11, 2002.
 {¶ 6} The facts emanating from the record are as follows: appellant is a councilman for the city of Mentor, Ohio, as well as the owner of King's Deli where Ziburis was employed since May 2001. Ziburis began as an entry level cook, was promoted to kitchen manager, then demoted due to her declining performance, according to appellant. The incident at issue occurred on October 13, 2001, at King's Deli.
 {¶ 7} According to Ziburis's testimony, she opened up King's Deli on the morning of October 13, 2001. After appellant arrived, he told Ziburis that he and his wife got into a fight and stated that he was interested in another woman. Ziburis testified that "that woman was me." Ziburis told appellant that "I love my boyfriend, and you are out of luck." Pursuant to Ziburis's testimony, appellant then grabbed Ziburis's arm, put his arms around her so that she could not move, and kissed her neck and cheek. Ziburis got away and walked back over to where she was making salads. The first customer of the day came in and Ziburis went into the kitchen to cook steak on the grill. At that time, Ziburis testified that appellant came up behind her and put his arms around her waist and ground his pelvis into her. Ziburis further stated that while appellant kissed the back of her neck, she elbowed him to get away, and appellant grabbed her buttocks as he walked away laughing.
 {¶ 8} Ziburis also testified that appellant left King's Deli shortly thereafter. Around 12:30 p.m. on that same day, Allison Mocilnikar ("Allison"), who was employed at the deli, came in to work, and Ziburis told her what had happened. Allison called and left a message for her brother, Matthew Mocilnikar ("Matthew"), also an employee of King's Deli, to tell him the story. Matthew called back about twenty minutes later, and Ziburis stated to him what happened as well. Ziburis also called her boyfriend, Mike Zele ("Zele") and told him about the incident. Ziburis placed a note on appellant's desk, explaining why she left the restaurant in the middle of the day. According to the note, Ziburis said, "I don't feel safe working here any more. You took advantage, and you disrespected me and my boyfriend and your wife and your whole family, and I was not comfortable working here any more." Ziburis then quit. Ziburis locked up King's Deli and went home.
 {¶ 9} Appellant denied the allegations of Ziburis. Based on appellant's testimony, Ziburis's performance began to decline, and he hired another employee around September 20, 2001, to do her job. As a consequence, appellant was forced to cut Ziburis's pay as well as her hours. Appellant testified that on October 9, 2001, Ziburis approached him while he was in his office. Appellant stated that "* * * she started getting flirtatious. She started playing with her — piercing her tongue and flirting with me. She leaned for me, kissed me. I did respond for a very short time. She went to reach a little bit lower. I pushed her hand away. I backed up. I said, `No. This is not a good idea.' I admit for a second that I did not act properly, but that's all that happened. That was it." Appellant further stated, "I did not touch [Ziburis] at all on [October 13, 2001], nothing, zero." Appellant contends that on October 13, 2001, he was in and out of King's Deli all day and Ziburis's allegations are false. When he went back to the deli around 3:45 p.m., Ziburis and Allison were both gone. Appellant tried contacting each of them to find out what happened. Ziburis recorded appellant's conversation with her in which he apologized. According to appellant, he apologized in order to appease Ziburis and because he wanted her to return the key to his restaurant.
 {¶ 10} Three friends and co-workers of Ziburis testified at trial for the state. Cassandra Kocab ("Cassandra") was hired by appellant on May 31, 2001. Cassandra stated that appellant had conversations with her about sex and inquired as to what type of sexual things she had done with her boyfriend. Cassandra said that her parents made her quit, which she did on September 15, 2001, due to the fact of how she was treated by appellant and the things that he would say to her. On October 13, 2001, Ziburis called Cassandra and told her about the incident. Also, Allison and Matthew both testified regarding the demeanor of Ziburis when she had told them about the incident. Allison and Matthew each stated that Ziburis was upset and cried when she told them what had happened.
 {¶ 11} Robert T. Daubenmire ("Patrolman Daubenmire"), a patrolman with the Willowick Police Department, was dispatched to a 9-1-1 call from Zele on October 13, 2001. According to Patrolman Daubenmire, Zele was very upset and told him that Ziburis was sexually assaulted at work in Mentor earlier that day. Because Mentor is not within Patrolman Daubenmire's jurisdiction, he told Zele and Ziburis to go to the Mentor Police Department to file a report, which they did.
 {¶ 12} Detective James Collier ("Detective Collier"), a detective with the city of Mentor, interviewed Ziburis and testified for the state at trial. Based on Detective Collier's testimony, Ziburis told him that the atmosphere at work became very uncomfortable, and that appellant's comments and actions became more aggressive. Detective Collier stated that Ziburis was very upset and cried when she talked about the October 13, 2001 incident.
 {¶ 13} On July 12, 2002, appellant was convicted of sexual imposition and unlawful restraint and sentenced for each count to a fine of $500 and costs, sixty days in jail to be served consecutively, and three years active probation. On July 24, 2002, appellant filed a motion for new trial pursuant to Crim.R. 33(A), which was overruled by the trial court on August 9, 2002. According to the trial court's August 9, 2002 judgment entry, which granted mitigation to appellant, appellant was given credit for six days already served in jail, and the trial court suspended an additional nine days as to his conviction of sexual imposition. As to the jail sentence for conviction of unlawful restraint, the trial court suspended fifteen days in jail. The trial court stated that both jail sentences shall continue to run consecutively, and the fines and probation shall continue as set forth in the prior sentencing order of July 12, 2002. It is from that entry that appellant filed a timely notice of appeal on August 27, 2002, and makes the following assignments of error:
 {¶ 14} "[1.] The trial court abused its discretion in refusing to allow evidence of a civil suit [that appellee's] complaining-witness had filed against [appellant] to be admitted for the purpose [of] impeaching her credibility.
 {¶ 15} "[2.] The trial court erred when it denied appellant's motion for a new trial.
 {¶ 16} "[3.] The trial court committed plain error and denied appellant his right to a fair trial by permitting a state witness, a police officer and the prosecutor to opine as to the victim's and [appellant's] credibility.
 {¶ 17} "[4.] [Appellant] was denied his due process rights to a fair trial because of the ineffective assistance of his counsel."
 {¶ 18} Because appellant's first and second assignments of error are interrelated, they will be addressed in a consolidated fashion. Appellant argues that the exclusion of impeachment testimony of Ziburis's previously filed or contemplated civil action against appellant is an abuse of discretion that mandates reversal and a new trial. Appellant specifically contends that the issues of Ziburis's previous filing of a civil lawsuit against appellant and her possible financial interest in the outcome of the trial, were properly raised and readily apparent to the trial court from the context of appellant's counsel's questioning.
 {¶ 19} A motion for a new trial is governed by Crim.R. 33, which states:
 {¶ 20} "(A) Grounds
 {¶ 21} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 22} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 {¶ 23} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 {¶ 24} "(3) Accident or surprise which ordinary prudence could not have guarded against * * *;
 {¶ 25} "(4) That the verdict is not sustained by sufficient evidence or is contrary to law * * *;
 {¶ 26} "(5) Error of law occurring at the trial; * * *."
 {¶ 27} Evid.R. 103(A)(2) states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."
 {¶ 28} Evid.R. 611(B) provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility."
 {¶ 29} In State v. Ferguson (1983), 5 Ohio St.3d 160, 165-166, the Supreme Court of Ohio stated: "[i]t is beyond question that a witness' bias and prejudice by virtue of pecuniary interest in the outcome of the proceeding is a matter affecting credibility under Evid.R. 611(B). * * * The general rule is that the pendency of a civil action brought against an accused by a witness in a criminal case is admissible as tending to show interest and bias of the witness to prove a motive to falsify, exaggerate or minimize on his part, in other words, to support a claim that such witness' testimony may be false or inaccurate, intentional or otherwise. Such evidence may be introduced in cross-examination. * * *" Thus, exclusion of impeachment testimony of a pending or contemplated civil action by a witness against an accused is an abuse of discretion that mandates reversal and a new trial. Id. at 167.
 {¶ 30} In State v. Evans (July 27, 2001), 2d Dist. No. 18512, 2001 Ohio App. LEXIS 3347, the Second District determined that the trial court abused its discretion by not allowing the defendant to question the victim as to whether he had retained an attorney for a civil suit. Applying Evid.R. 611(B) and Ferguson, supra, the Second District held that an "* * * accused is permitted to cross-examine the prosecuting witness as to the witness' pending or contemplated civil action against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution." Id. at 5-6.
 {¶ 31} In the case sub judice, the trial court refused to admit evidence of Ziburis's civil action on three separate occasions, once during a pre-trial hearing and twice during the cross-examination of Ziburis and her co-worker, Matthew. Pursuant to Ferguson and Evans,
extrinsic evidence, namely Ziburis's civil complaint, may be used for impeachment purposes. Based on Evid.R. 611(B), a witness' bias and prejudice by virtue of a pecuniary interest in the outcome of the proceeding is a matter affecting credibility. The case against appellant was predicated to a great degree upon Ziburis's testimony, therefore, making Ziburis's credibility crucial. Pursuant to Evid.R. 103(A)(2), a party is not required to proffer when evidence is excluded on cross-examination. As such, the trial court's exclusion of the evidence of Ziburis's civil complaint against appellant is plain error which requires reversal and a new trial based on Crim.R. 33. Thus, appellant's first and second assignments of error are with merit.
 {¶ 32} In his third assignment of error, appellant argues that the trial court committed plain error and denied appellant his right to a fair trial by permitting a police officer and the prosecutor to opine as to Ziburis's and appellant's credibility. Appellant specifically contends that he was denied his due process rights and a fair trial when the state's lead detective "vouched" for the credibility of the complaining witness. Also, appellant stresses that his right to a fair trial was seriously prejudiced by the gross misconduct of the prosecutor during closing arguments. As such, appellant alleges that the cumulative effect of the state's improper witness vouching and the prosecutor's misconduct seriously prejudiced his right to a fair trial.
 {¶ 33} State v. Jenks (1991), 61 Ohio St.3d 259, 282, states: "`(* * *) "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91
* * *, paragraph three of the syllabus. Plain error does not exist unless, but for the error, the outcome at trial would have been different. State v. Moreland (1990), 50 Ohio St.3d 58, 62 * * *.' Statev. Watson (1991), 61 Ohio St.3d 1, 6 * * *." (Parallel citations omitted.)
 {¶ 34} The court in State v. Slagle (1992), 65 Ohio St.3d 597,607, stated: "when we review a prosecutor's closing argument we ask two questions: `whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' State v.Smith (1984), 14 Ohio St.3d 13, 14 * * *. The closing argument is considered in its entirety to determine whether it was prejudicial. Statev. Moritz (1980), 63 Ohio St.2d 150, 157 * * *." (Parallel citations omitted.)
 {¶ 35} Evid.R. 608(A) states that: "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."
 {¶ 36} "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." State v. DeMarco
(1987), 31 Ohio St.3d 191, paragraph two of the syllabus.
 {¶ 37} In the instant matter, appellant contends that during the direct examination of Cassandra, appellee improperly elicited her opinion as to Ziburis's truthfulness. Also, appellant argues that Detective Collier improperly gave his opinion regarding the truth of Ziburis's statements to the Mentor Police Department in which she recounted the alleged events. As such, appellant stresses that Detective Collier's statement, coupled with Cassandra's testimonial "vouching" were completely improper and highly prejudicial. We agree. The prosecutor asked Cassandra whether she ever had a doubt that Ziburis was telling her the truth, to which Cassandra responded, "no." The prosecutor also asked Cassandra if there was ever a time when she questioned Ziburis's truthfulness and Cassandra replied that there was not. During closing argument, the prosecutor referenced testimony given on direct examination by Detective Collier, who gave his personal opinion as to the truth of Ziburis's statements to the Mentor Police Department regarding the alleged events. Detective Collier's statements, coupled with Cassandra's vouching, are an improper invasion of the fact-finding process and were highly prejudicial to appellant. See State v. Boston (1989),46 Ohio St.3d 108, 128. It is the jury's duty to determine who was being truthful and to decide what inferences could be drawn from the content of the taped conversation between appellant and Ziburis. Id. at 129.
 {¶ 38} Appellant also argues that his right to a fair trial was seriously prejudiced by the gross misconduct of the prosecutor during her closing argument. We agree. In her closing argument, the prosecutor stated to the jury that "Detective Collier * * * believed that [Ziburis] was telling the truth [and] I [also] do believe that [Ziburis] was telling the truth." The prosecutor further proclaimed to the jury, "I believe, ladies and gentlemen, that you will believe next to nothing [appellant has] told you" and that "you [should] come back and tell him * * * [y]ou are a liar. We don't believe you." As such, the prosecutor committed misconduct by improperly expressing her personal belief or opinion regarding the credibility of Ziburis as well as the alleged guilt of appellant. See State v. Smith (1984), 14 Ohio St.3d 13, 14; State v.McDade (June 26, 1998), 11th Dist. No. 96-L-197, 1998 Ohio App. LEXIS 2927, at 11. Thus, pursuant to DeMarco, supra, the cumulative effect of these errors deprived appellant of a fair trial. Therefore, appellant's third assignment of error is with merit.
 {¶ 39} In his fourth assignment of error, appellant argues that he was denied his due process rights to a fair trial because of the ineffective assistance of his counsel. Appellant specifically contends that his trial counsel's performance fell below an objective standard of reasonableness and was prejudiced because there was a reasonable probability that but for his counsel's unprofessional errors, the result of the proceeding would have been different.
 {¶ 40} Strickland v. Washington (1984), 466 U.S. 668, 687 states: "a convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 41} "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at paragraph two of the syllabus. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "To warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 42} In the case at bar, appellant stresses that it is difficult to understand why his counsel would not assert Ferguson, supra, and urge the trial court to follow its dictates. Appellant argues that it is obvious that both the trial judge and prosecutor did not read the law. Also, appellant contends that his counsel was ineffective in failing to object to various witness testimony as well as to prosecutorial misconduct during closing arguments. We agree.
 {¶ 43} The record clearly indicates that appellant's counsel was ineffective. Appellant's counsel failed to raise an appealable issue as to the contemplated or pending civil action by Ziburis against appellant. Further, appellant's counsel did not question Ziburis about her possible financial interest in the outcome of the trial, and failed to object to any of the witness vouching or improper remarks by the prosecutor. It was appellant's counsel's duty to assert Ferguson, which mandates that reversal of a conviction and a remand for new trial is mandatory where the trial court excludes impeachment evidence of a pending or contemplated civil action by a witness against an accused.Ferguson, supra, at 165-166. Pursuant to Strickland, appellant has clearly shown that his counsel's performance was deficient and that the deficient performance prejudiced the defense. As such, appellant's counsel's representation fell below an objective standard of reasonableness. Therefore, a reversal is warranted since appellant has shown that there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceeding would have been different. Thus, appellant's fourth assignment of error is with merit.
 {¶ 44} For the foregoing reasons, appellant's assignments of error are well taken. The judgment of the Mentor Municipal Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
William M. O'Neill, J., concurs.
Cynthia Westcott Rice, J., dissents with dissenting opinion.
[1] We also note that appellant appeals from the July 12, 2002 trial court judgment entries in which he was convicted and sentenced for sexual imposition and unlawful restraint.